WHITNEY v. McLEAN et al.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

1. SALE—CONTRACT—PAYMENT AND INSPECTION.

Plaintiff telegraphed defendants: "Do you want car choice potatoes three twenty-five delivered?" Defendants answered: "Will give three delivered choice draft B. L. if accepted answer." Plaintiff replied: "Three twenty-five is lowest for best stock." To which defendants responded: "Will accept car at your price if stock fine ship immediately." Whereupon plaintiff telegraphed: "Shipped 200 best stock in the state fancy stock." *Held*, that the contract, which was for 200 barrels at $3.25 per barrel, required draft to be paid on presentation of indorsed bill of lading; and defendants' right of inspection, and rejection in case of inferior quality, could not be exercised till after such payment.

2. SAME—REFUSAL TO ACCEPT—RESALE FOR PURCHASER'S BENEFIT—NOTICE.

A finding that notice of resale for buyers' benefit, they having refused to accept on delivery, was given the buyers, is sustained by evidence that notice was mailed them, the only contradicting evidence being the testimony of the husband of one of defendants that he did not receive the notice.

Appeal from Monroe county court.

Action by Orville C. Whitney against Emma V. McLean and another. From a judgment on a verdict for plaintiff, and from an order denying a motion made on the minutes for a new trial, defendants appeal. Affirmed.

Plaintiff's cause of action was for an alleged breach of a contract entered into by the defendants, who were co-partners, in June, 1894. At that date the plaintiff was in Washington, N. C., and was a produce dealer, engaged in buying new potatoes for early shipment to the North, and the defendants were produce dealers at Rochester. To sustain the alleged contract the following telegrams were read in evidence:

"June 12, 1894, Washington, N. C.
"To McLean & McEvoy: Do you want car choice potatoes three twenty-five delivered. O. C. Whitney."

"June 13, 1894, Rochester, N. Y.
"O. C. Whitney: Will give three delivered choice draft B. L. if accepted answer. McLean & McEvoy."

"June 13, 1894, Washington, N. C.
"McLean & McEvoy: Three twenty-five is lowest for best stock.
"O. C. Whitney."

"June 13, 1894, Rochester, N. Y.
"O. C. Whitney, Washington, N. C.: Will accept car at your price if stock fine ship immediately. McLean & McEvoy."

"June 13, 1894, Washington, N. C.
"McLean & McEvoy: Shipped two hundred best stock in the state fancy stock. O. C. Whitney."

Subsequent to the telegrams, the plaintiff shipped 200 barrels of potatoes to Rochester, receiving a bill of lading therefor, and gave directions, which were noted on the bill of lading, to notify McLean & McEvoy, and there was also indorsed on the bill of lading:

"Deliver to McLean & McEvoy. O. C. Whitney."

And attached to the bill of lading was a draft for $650, which the plaintiff delivered to a bank in Washington, N. C., and the draft with the bill of lading attached were forwarded to the Flour City National Bank of Rochester for collection. The draft was presented for payment, and the bill of lading accompanying the same, with an offer to hand the same over

to the defendants upon their payment of the draft. The defendants declined to make payment of the draft, and they sought, without the bill of lading, to have the parties in charge of the freight office of the New York Central Railroad allow an inspection of the potatoes. The railroad company refused an inspection, except upon the production of the bill of lading, and the defendants were informed that, upon presentment of the bill of lading, inspection would be allowed. They refused to pay the draft, and to take the bill of lading, and inspect or take possession of the potatoes. As soon as the plaintiff learned that the defendants refused to receive the potatoes, he put them under the control of his attorney, ·with instructions to sell the same at auction for the defendants' account. Notices of the intended sale were sent to the several dealers in the city, including the defendants, of the time and place and intention to hold the sale. The potatoes were sold at public auction for $237.50 net, the expense of the sale being about $12.50. The defendants, in answer to this action, claim that the refusal of the railroad company to allow the defendants to inspect the potatoes at the freight house absolved the defendants from all liability under their contract; and, secondly, they claim that, subsequently, the plaintiff's agent waived any claim which the plaintiff might have had for damages. Some minor questions were presented to the jury.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

H. B. Hallock, for appellants.
Elbridge L. Adams, for respondent.

HARDIN, P. J. What was the contract between the parties? To answer this question, the telegrams must be interpreted. On June 12th the plaintiff's telegram contained an inquiry to the defendants as to whether they desired a "car choice potatoes three twenty-five delivered." This telegram, when amplified, undoubtedly means that the inquiry was to the defendants, in substance, whether they wished to purchase a car load of choice potatoes at $3.25 per barrel, delivered in the city of Rochester. In response to that telegram, on June 13th, the defendants addressed to the plaintiff, from their place of business in Rochester, to him, in Washington, N. C., an answer in the words following:

"Will give three delivered choice draft B. L. if accepted answer.
"McLean & McEvoy."

In attempting to interpret this telegram it must be borne in mind that the operator or operators who had delivered the telegram are chargeable with want of punctuation or a proper use of capitals such as might be expected from a more intelligent source, or on an occasion when additional words would not render the tariff greater. The apparent meaning of the dispatch would seem to be that the defendants were willing to pay to the plaintiff $3 per barrel for potatoes, if they were choice, and that payment therefor would be made by honoring a draft accompanying a bill of lading. The telegram was in the nature of an inquiry, and, after the letters "B. L.," were inserted the words, "If accepted answer." A reasonable interpretation of the telegram as a whole seems to be found in applying the words, "If accepted answer," as significant of a desire on the part of the defendants to notify the plaintiff that, if he accepted their proposition, they desired him to notify them, and for such purpose they used the words, "If accepted answer." The plaintiff,

in response to that inquiry, addressed to the defendants, on the same day, a reply in words following:

"Washington, N. C.

"McLean & McEvoy: Three twenty-five is lowest for best stock.

"O. C. Whitney."

Upon the delivery of this to the defendants, they were apprised of the fact that the plaintiff was willing to sell in accordance with the terms already stated between the parties, at the price of $3.25, and that that price was the lowest "for best stock." It was, therefore, incumbent upon the defendants to determine whether they would carry forward the negotiations, and comply with the terms as proffered by the plaintiff, or would abandon the negotiation. In making that determination, they apparently resolved to submit a further offer to the plaintiff, which they did in the following language:

"Will accept car at your price if stock fine ship immediately.

"McLean & McEvoy."

When the plaintiff received that dispatch, he had a right to assume that the parties were willing to close, and intended to close, a contract with him for the purchase of the potatoes of the kind theretofore mentioned in the dispatches, and upon the terms therefor mentioned in the dispatches, and that the bill of lading was to accompany the shipment, and that was to be accompanied by a draft; and, as no time was mentioned for credit, the common understanding would be that the draft was to be a sight draft, such as was drawn at the time the bill of lading was transmitted. To indicate that the plaintiff had accepted the terms as found in the antecedent telegrams, he transmitted to the defendants the following dispatch, which was received by the defendants, viz.:

"June 13, 1894, Washington, N. C.

"McLean & McEvoy: Shipped two hundred best stock in the state fine stock.  O. C. Whitney."

The interpretation which we have intimated should be given to the telegrams, and the deduction of a contract therefrom which we have suggested, seem to be in accordance with one of the views entertained by the trial judge, and claimed by the plaintiff to be the proper one. On the other hand, the defendants claim that the telegrams were susceptible of another construction, and induced the trial judge to submit the controversy between the plaintiff and the defendants, as to what construction should be given to the telegrams, to the jury. The defendants insist that the telegrams should be read:

"Will pay draft attached to bill of lading if potatoes are accepted by us on arrival."

During the charge the trial judge intimated his interpretation of the telegrams in the following language:

"I construe the promise to pay 'draft B. L.' to mean that the purchaser will pay the amount of the draft on presentation to him of the bill of lading properly indorsed, so that he can take that bill of lading and get his goods. If that is all there is of the contract, it means that the purchaser must pay the amount of the draft the moment the bill of lading is

presented to him, and before he goes and gets the goods, or sees them. Whether that contract is the contract sued on is a question for the jury. The bill of lading, as made out, would have enabled McLean & McEvoy, if they had possession of it, to go to this railroad company and get their 200 barrels of potatoes."

Considerable evidence had been given as to the circumstances attending the relations of the parties to each other, and the question as to the interpretation of the contract was as favorably submitted to the jury as the defendants were entitled to have the same. We are of the opinion that no error of which the defendants can avail arose during the trial by reason of the submission of the question of what construction should be placed upon the telegrams, in answering the question, "What is the contract in the case?" People v. O'Neil, 49 Hun, 422, 4 N. Y. Supp. 119, affirmed 112 N. Y. 355, 19 N. E. 796, and cases cited.

In the course of the charge, the judge observed:

"Did it give to these men, by express terms, or some custom in the trade, the right to go and inspect the potatoes before they were obliged, under the contract, to honor this draft? If it did, then your verdict must be for the defendants. * * * If you find the contract did not give them the right to inspect before they paid the draft, and that the potatoes were all right, and sent in proper packages, then your verdict will be for the plaintiff for such sum as you think will compensate him for his damages in the case, which represents the difference between the contract price and the price which the plaintiff was able to get for the potatoes after the refusal on the part of the defendants to pay for them."

Near the close of the opinion in Cumpston v. McNair, 1 Wend. 457–463, it was said: "As the jury found in accordance with what we hold to be the law of the case, this is no ground for direction of a new trial," although the question was one which the judge should have decided.

In Miller v. Insurance Co., 2 E. D. Smith, 269, it was held:

"It is no ground for the reversal of a judgment that a question which ought to have been determined by the court has been submitted to the jury, where, in the opinion of the appellate tribunal, the court must have decided as the jury in fact found."

Undoubtedly, under the ordinary executory contract, the vendee is not required to accept and pay without examination. As was said in Pope v. Allis, 115 U. S. 372, 6 Sup. Ct. 69:

"The mere delivery of the goods by the vendor to the carrier does not necessarily bind the vendee to accept them. On their arrival he has the right to inspect them, to ascertain whether they conform to the contract; and the right to inspect implies the right to reject them if they are not of the quality required by the contract."

In that case the plaintiff had paid for the iron in advance of his opportunity to inspect and reject. Subsequent to the payment, he inspected and refused to accept 500 tons of it, on the ground that it was not of the grade called for by the contract, and thereupon gave the defendants notice of the fact that he held the iron subject to their order, and brought a suit to recover the price of the iron and freight paid thereon, and his recovery was allowed.

In Pierson v. Crooks, 115 N. Y. 552, 22 N. E. 349, the general rule was under discussion, and the court said:

"The purchaser of goods under an executory contract, where payment and acceptance are, by the contract, concurrent and dependent obligations, cannot, on delivery of the goods, pay the purchase money, and subsequently rescind the contract, and reject the goods for defects ascertainable on examination. It would be inconsistent with the nature of the transaction, and the admission which the payment implies, to permit him to do so, in the absence of fraud or deceit on the part of the vendor. Brown v. Foster, 108 N. Y. 387, 15 N. E. 608. In such case the purchaser must satisfy himself, before making payment, that the goods tendered correspond with the contract. But the contract may provide that payments shall be made in advance before delivery or acceptance of the goods. There is nothing in such a stipulation inconsistent with an executory contract, nor would payment under such a contract preclude the purchaser, when delivery is tendered, from the right of examination, or from exercising the right of rejection if the goods did not conform to the contract."

In that case the contract was such that the buyer was required to pay the customs before he could obtain possession of the property or exercise any right of inspection thereof; and, in dealing with the question involved in the case, the court said:

"The duties, under the rules of the customs, were paid, and were required to be paid, before the plaintiffs took possession, and as a condition of their exercising any control of the property. The event upon which the plaintiffs were bound to pay for the iron was specified in the contract, and that was on the delivery to them of the shipping documents. This might, and in the ordinary course would, precede the actual delivery and receipt of the goods into their custody. There would be nothing necessarily inconsistent in making a payment on presentation of the shipping documents, and a subsequent rejection of the iron on examination. It would be analogous to a payment in advance of delivery. The defendants had a right to demand payment on delivery of the shipping documents, although the plaintiffs had had no opportunity to inspect the iron."

Applying the doctrine of that case to the case in hand, it is quite apparent that the plaintiff, by the use of the words "draft B. L.," intended to exact from the buyers the promise to pay upon receipt of the bill of lading; and the charge of the court was such that the jury necessarily have affirmed that such was the construction of the telegrams, and that the contract between the parties was to that effect. Inasmuch as the finding by the jury is in accordance with our views of the law, the defendants suffered nothing by submitting the question to the jury, instead of the court ruling as matter of law, as requested during the trial. See Benj. Sales, 530; Id. 248, § 328.

2. It is contended by the defendants that this action cannot be maintained, "for the reason that no notice was given of plaintiff's intention to resell the potatoes on their account." We think there are two answers to this position. There was evidence that, on the 25th or 26th of June, by direction of the plaintiff, notice was sent to numerous wholesale commission dealers, fruit and produce dealers, in the city of Rochester, containing the following language:

"To Whom it May Concern: I will offer for sale at public auction, to the highest bidder, one car load, consisting of 200 barrels, of North Carolina potatoes, in good condition, at the N. Y. C. & H. R. R. R. freight house, on Wednesday, June 27, 1894, at 3 o'clock p. m. This sale is to close a deal.                                              O. C. Whitney."

There was testimony that these notices were sent by mail, on June 26th, to several parties named, and among those named was the defendants' firm. There was no evidence tending to contradict the evidence to which we have just referred, except that given by the husband of one of the defendants, which is to the effect that he did not receive the notice. There is no proof that the notice did not reach the hands of one or the other, or both, of the defendants. At the request of the defendants' counsel the court charged the jury:

"That if they find no notice was given to defendants of the intention of the plaintiff to resell the goods on their account, no recovery can be had in this action."

We think that charge was quité as favorable as the defendants were entitled to, and that the evidence warranted the jury in finding that the notice was given.

In Van Brocklen v. Smeallie, 140 N. Y. 75, 35 N. E. 415, Finch, J., in speaking of the rule as to the vendor's right, says:

"Where the second method is adopted, and the vendor chooses to make a resale, that need not be at auction, unless such is the customary method of selling the sort of property in question; nor is it absolutely essential that notice of the time and place of sale should be given to the vendee. Pollen v. Le Roy, 30 N. Y. 556. Still, as the sale must be fair, and such as is likely to produce most nearly the full and fair value of the article, it is always wisest for the vendor to give notice of his intention to resell, and quite unsafe to omit it."

3. It is claimed that what transpired between the defendants and Mr. Foote operated as a waiver of the liability of the defendants to the plaintiff. The evidence upon the subject of waiver was commented upon by the judge in his charge to the jury, and he instructed the jury that, in order to have what transpired operate to bind the plaintiff, the jury must be satisfied that Foote had the authority to represent the plaintiff and to make a waiver of the defendants' obligations. And when the judge reached that part of the charge in which he said, viz.: "It will be for you to determine, from all the evidence in the case, whether what Mr. Foote did was done with Whitney's authority, and whether, in doing so, he acted on correct information as to the actual existence of the contract, and as to its terms. If you find that he made a waiver because of false information McLean gave him as to the contract, then there is no waiver which binds his principal, Mr. Whitney,"—we think he put the case before the jury in as favorable light as the defendants were entitled to have the same submitted. Besides, there is no exception as to that branch of the case which presents any error for review.

No other exceptions are presented requiring any special comment, or that seem to present any error which prejudiced the rights of the defendants.

Judgment and order affirmed, with costs. All concur, except ADAMS, J., not voting.