THICK *v.* DETROIT, UTICA & ROMEO RAILWAY.

1. PLEADING — DECLARATION — OBJECTION TO EVIDENCE — DEMURRER.

Where a declaration is sufficient to sustain a judgment, and its only fault is that it should be more specific, defendant may not object to the admission of any evidence under it, but, if desiring it to be made more specific, must demur to it.

2. SALES—REFUSAL TO COMPLETE CONTRACT—NECESSITY OF TENDER.

Refusal by the purchaser to carry out a contract for sale of railroad ties justifies the seller in treating the contract as broken and suing for damages, without a delivery or formal offer of delivery.

3. SAME—ACTION FOR BREACH—EVIDENCE.

Plaintiff, in an action for refusal of defendant to carry out a contract for the purchase of railroad ties, may show that, though he did not have the ties, he was able to procure them.

4. SAME—EVIDENCE.

Evidence, in an action for refusal of defendant to carry out a contract to purchase railroad ties, that some of the ties defendant afterwards contracted to purchase from another were

a part of the lot for which plaintiff had contracted with which to fill defendant's order, is inadmissible; it not being contended there were not some good ties in the lot.

5. SAME—INSPECTION OF GOODS.

Where plaintiff's contract to sell and deliver ties made no provision for inspection, it is not changed, as to plaintiff's duty to deliver them without a prior inspection, by defendant's compliance with plaintiff's request, made on account of the demand of the person from whom plaintiff was obtaining the ties, that an inspector be sent; plaintiff having refused to abide by his inspection, and defendant having refused to send another inspector.

6. SAME—PAYMENT ON DELIVERY—DRAFT ACCOMPANYING BILL OF LADING.

A contract to furnish railroad ties of a certain quality, to be paid for cash on delivery, entitles the buyer to inspect before paying, and an offer to ship, with sight draft attached to bill of lading, unaccompanied by an offer of inspection, is not a tender of performance.

Error to Wayne; Donovan, J.   Submitted July 7, 1904. (Docket No. 204.)   Decided October 4, 1904.

Assumpsit by Joseph A. Thick against the Detroit, Utica & Romeo Railway for breach of a contract to purchase certain ties.   There was judgment for plaintiff, and defendant brings error.   Reversed.

The contract, for the breach of which this suit is brought, is evidenced by the following writings:

"DETROIT, MICH., March 14, 1900.
"J. A. THICK.

"Dear Sir:   We will take seventeen thousand (17,000) cedar ties, to be delivered on the M. C. R. R. at Center Line, North Detroit, or Belt Line, as we may hereafter direct.   Price for No. 1 standard cedar ties forty-one cents (41).   We will take some No. 2 ties at twenty-five cents.   Terms cash on delivery.

"Yours truly,
"DETROIT, UTICA & ROMEO RY.
"Geo. B. Davis, Pres.

"I accept the above order.
"J. A. THICK."

Plaintiff owned no ties, but relied upon his ability to buy and furnish the same to the defendant. He furnished none, but claimed that he had contracted for some, had them ready for delivery, but that the defendant refused to receive them. Plaintiff testified that at Posen he contracted for 20,000 ties; that he telegraphed to defendant's agent to send an inspector. Defendant's agent, Mr. Davis, telegraphed that he would send one, fixing time. The inspector came. Two carloads were inspected and loaded. The parties from whom plaintiff contracted to purchase were dissatisfied with the inspection, claiming that it was unfair, and refused to load any more cars under that inspector. Plaintiff then went to Detroit to see Mr. Davis. His version of what then occurred, and his reason for considering the contract broken by the defendant, are given by him as follows:

"I told him that the tie inspector was an incompetent man. He didn't know a good tie from a bad one, and the men wouldn't load any more under his inspection; but they would get Woods for inspection—he was inspecting ties for the D. & M. and the Central Northwestern—or any other inspector who was a qualified inspector. He said: 'We can get the Detroit Northwestern inspector, or Mr. Maltby's inspection.' Mr. Davis said he didn't want Mr. Woods to inspect those ties, and said: 'Do you want this man Duggan?' I said: 'Yes.' And he said: 'Would you be satisfied with his inspection?' I said: 'Yes.' And he said: 'All right; I will let him go up in the morning.' And I said: 'Well, tomorrow is Saturday.' And he said: 'Well, he can go up Monday morning.' And I said: 'All right.' On Monday morning I went up to see if Mr. Duggan was going up, and said to Mr. Davis: 'I don't see anything of Mr. Duggan.' And he said: 'No; I am not going to let him go up this morning. You have two cars loaded, haven't you?' I said: 'Yes.' And he said: 'You can ship them down.' I said: 'Yes; these cars are coming with a sight draft attached to the bill of lading.' He said: 'That isn't cash on delivery.' I said: 'That is cash on delivery in my estimation, Mr. Davis. I am not going to ship down 17,000 ties, and put them into the railroad, and then let you go into litigation for three or four years, the same as the French road did.'

He said: 'You needn't ship any more ties. I won't send an inspector.' I says: 'If you don't want the ties, I can send them from other shipping points.' And he said: 'I don't want them at all. I won't let you furnish them with a sight draft attached to the bill of lading.' I said: 'I will not ship them any other way. That is the way my contract reads, and I think that is a sight draft attached. You don't need to pay for them until inspected and delivered.' He said: 'I won't accept them in that shape.' I said: 'I won't ship them, then.' I had no other deal with Mr. Davis."

Plaintiff made no further offer to furnish ties. The defendant after some time made a contract with other parties for ties, which were furnished. Plaintiff sued, and recovered verdict and judgment for breach of contract.

*Philip T. Van Zile*, for appellant.

*J. Emmet Sullivan*, for appellee.

GRANT, J. (*after stating the facts*). 1. The declaration alleges a contract to buy of plaintiff, the ties to be delivered by him to defendant at Detroit, and to be paid for on delivery; the promise on the part of the defendant to accept and receive them; plaintiff's readiness and willingness to carry out the contract; and the refusal by the defendant to accept the ties selected by him in accordance with the agreement, and consequent loss of profits. The plea was the general issue. Upon the trial defendant objected to the admission of any evidence, for the reason that the declaration did not state a cause of action. The precise objection is that the declaration does not allege delivery, or offer to deliver, or ability to deliver, or that he was prevented from delivery by the defendant. The declaration should, perhaps, have been more specific; but, if it is sufficient to sustain a judgment, the only course open to defendant was to demur. *Rowland* v. *Kalamazoo Superintendents of Poor*, 49 Mich. 553 (14 N. W. 494), and authorities there cited. The declaration alleges a selection of ties according to the contract and the refusal to accept them. Under plaintiff's version of the case a

delivery or formal offer of delivery was unnecessary. A refusal on the part of defendant to carry out the contract justified plaintiff in treating it as broken, and bringing suit for damages. We think the declaration states a cause of action, and that, if defendant desired a more specific one, it should have demurred.

2. We do not think it was error to permit plaintiff to show his ability to procure ties by purchase or otherwise to fill his contract.

3. About two months after the conversation above detailed between plaintiff and Davis, Davis on behalf of the defendant made a contract with other parties to furnish ties. Plaintiff was permitted to show that some of these ties were a part of the lot which plaintiff had contracted for at Posen. This evidence was wholly immaterial. It had no tendency to sustain the plaintiff's case. It was not contended that there were not good ties in that lot. Some of them passed the inspection of the inspector first sent there under the telegram from plaintiff to defendant. The admission of this evidence might not constitute error of sufficient gravity to reverse the case if there were no other errors.

4. The contract provided for no inspection. It was the duty of the plaintiff to deliver the ties at the place named. There was no subsequent agreement for inspection. Evidently plaintiff could not purchase the ties at Posen without an inspection satisfactory to the person from whom he purchased. Plaintiff's request by telegram to send an inspector, and defendant's compliance with the request, did not change the contract, or provide for a binding inspection. Plaintiff recognized this, for he repudiated the inspection. If the parties had agreed to an inspector, his inspection, in the absence of fraud or mistake, would have been conclusive. Under plaintiff's version defendant refused to provide and send another inspector. It was then clearly plaintiff's duty to deliver the ties at the time and place agreed upon. It was, therefore, error to submit to the jury the question of any change in the contract.

5. The circuit judge instructed the jury that a sight draft accompanying the bill of lading was equivalent to the payment of cash on delivery. This was error. The contract is unambiguous. All prior conversations were merged in it, and were inadmissible in evidence. It was the duty of the plaintiff to deliver ties of the character specified. It was the right of defendant to examine them before accepting and paying for them. Plaintiff had no ties at the time to deliver. Plaintiff might manufacture them, or might purchase them from others.

The law applicable to this case is stated by the Supreme Court of the United States in *Pope* v. *Allis,* 115 U. S. 363, 372 (6 Sup. Ct. 69, 73):

"When a vendor sells goods of a specified quality, but not in existence or ascertained, and undertakes to ship them to a distant buyer when made or ascertained, and delivers them to the carrier for the purchaser, the latter is not bound to accept them without examination. The mere delivery of the goods by the vendor to the carrier does not necessarily bind the vendee to accept them. On their arrival he has the right to inspect them to ascertain whether they conform to the contract, and the right to inspect implies the right to reject them if they are not of the quality required by the contract."

Where goods are sold and shipped to the vendee, and the vendor draws a sight draft with bill of lading attached, the vendee is not entitled to examine the goods in the hands of the carrier until he pays the draft and procures the bill of lading. In such case the vendee's only remedy is, having paid for the goods, to rescind the sale and sue for the purchase price, or to retain the goods and bring suit for damages. 2 Dan. on Neg. Inst. § 1734c; *Whitney* v. *McLean,* 4 App. Div. 449 (38 N. Y. Supp. 793). The parties may agree that the vendee and drawee may inspect before acceptance and payment, but, unless they do, no such right exists; or, if the vendor accompanies his draft with an offer of inspection before acceptance, that is sufficient tender of performance.

Judgment reversed, and new trial ordered.

The other Justices concurred.