(128 App. Div. 651.)

### PLUMB v. BRIDGE et al.

(Supreme Court, Appellate Division, Third Department. November 11, 1908.)

1. SALES (§ 168*)—CONTRACTS—RIGHTS OF BUYER—RIGHT TO INSPECT.
    An order for goods of a quality described, to be shipped to a designated point, given by a buyer who had not seen the property, is, in substance, an executory contract of sale, and the buyer is entitled to a reasonable opportunity for inspection before paying the price, especially where he receives notice that the seller in some respects has not complied with the order.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–407; Dec. Dig. § 168.*]

2. SALES (§ 168*)—CONTRACTS—RIGHTS OF BUYER—RIGHT TO INSPECT.
    The right of a buyer to inspect goods bought is not affected by the fact that the seller shipped them to the point of delivery in his own name.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 168.*]

3. SALES (§ 177*)—CONTRACTS—REJECTION OF GOODS—JUSTIFICATION.
    The fact that a seller of goods to be shipped to the place of delivery shipped the same in his own name, and drew, in the ordinary course of business, a draft on the buyer with the bill of lading attached, did not justify the buyer in refusing to accept the goods.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 177.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. SALES (§ 335*)—CONTRACTS—REJECTION OF GOODS—RESALE BY SELLER—
WHO MAY PURCHASE.
    Where a buyer claimed that the seller had violated the contract, and
the seller claimed that the buyer was in default, and that he would sell
the property and charge the buyer with the difference in price, the buyer
could protect himself by seeing that the property brought a fair price,
and he might induce a third person to buy at the sale.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 335.*]

5. SALES (§ 335*)—CONTRACTS—REJECTION OF GOODS—RESALE BY SELLER—
WHO MAY PURCHASE.
    Where a seller violated the contract, and, on the buyer's refusal to ac-
cept the goods, sold them with a view of charging the buyer with the
difference in price, the buyer might, without losing his right to sue for
the part payment, obtain the property, thereby enabling him to fulfill
contracts made in reliance on his contract with the seller.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 335.*]

6. SALES (§ 397*)—ACTIONS FOR PART PAYMENT—EVIDENCE—ADMISSIBILITY.
    A buyer, suing for the part payment after the seller had violated the
contract and had sold the goods with a view of charging the buyer with
the difference in the price, might show that a third person, who bought
the goods at the seller's sale and subsequently delivered them to the buy-
er, had inspected the goods before his purchase, as bearing on the buyer's
good faith.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 397.*]

7. SALES (§ 397*)—ACTIONS FOR PART PAYMENT—EVIDENCE—ADMISSIBILITY.
    A buyer suing for a part payment after rejection of the goods may
show the quality of the goods tendered by the seller, since, if the seller
did not send the goods of the quality agreed on, the buyer could refuse
to accept them.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 397.*]

    Appeal from Trial Term, Franklin County.
    Action by William H. Plumb against Edwin A. Bridge and another.
From a judgment on a nonsuit, plaintiff appeals. Reversed, and new
trial granted.
    Argued before SMITH, P. J., and CHESTER, KELLOGG, COCH-
RANE, and SEWELL, JJ.

    Kellas & Genaway (John P. Kellas, of counsel), for appellant.
    Fitch & Kiley (Edward A. Kiley, of counsel), for respondents.

    JOHN M. KELLOGG, J. The plaintiff at North Bangor, N. Y.,
ordered from the defendants at Canastota, N. Y., 8 tons good Dan-
ish seed cabbages, trimmed, at $10 per ton, and 150 bushels of medium
size dry yellow onions in sacks at 60 cents per bushel, and enough good
hand-picked winter apples to make up the car load. These prices were
f. o. b. Canastota, shipment to be made to Tupper's Lake, or Saranac
Lake to stop off at Tupper's Lake, the defendants to obtain as rea-
sonable a freight rate as they could for plaintiff. One hundred dol-
lars was paid in check with the order, and the balance was to be paid
upon the arrival of the car. Defendants shipped the property in a car
to their order to Saranac Lake, and drew a draft upon the plaintiff
for the balance due, with bill of lading attached, which draft was
drawn payable at a bank in Malone, some 50 miles distant from Sar-
anac Lake, and notified plaintiff that they had done so. Plaintiff re-
monstrated by wire that a draft should be drawn payable at such a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

distant place, as it would take several days to obtain a delivery of the property, and also objected to paying for the property until he had an opportunity to inspect it, and see that he was getting what he had bought. The cabbages were sent untrimmed, or not closely trimmed, and in that respect were not according to contract, and the defendants so notified the plaintiff, and proposed to allow him 1,600 pounds for shrinkage on that account. The onions were not sacked. After plaintiff objected to paying for the property until he could examine it, the defendants sent a man to Tupper's Lake to sack the onions, and notified the plaintiff that, unless he took the property and paid for it, they would sell it, and hold him responsible for any loss resulting. Thereupon the plaintiff asked one Greene at Saranac Lake to go and inspect the car, and purchase the contents at the best price he could. The agent sent by defendants called upon plaintiff, and told him that, if he would pay the draft, they would sack the onions for him as agreed, but plaintiff refused to pay the draft unless he had an opportunity to inspect the property before payment, which inspection was not accorded him. Thereupon the agent offered the property for sale at Saranac Lake, and Greene purchased the same for $218. The original contract price to the plaintiff was $292.50. Plaintiff brings this action to recover back the $100 paid by him upon the ground that the defendants failed to perform their contract, and asks damages on account of such nonperformance.

This was, in substance, an executory contract of sale; the plaintiff never having seen the property bought and the contract not relating to any particular property. The defendants undertook to furnish him the property as ordered of good quality, and the plaintiff was entitled to a reasonable opportunity for inspection before he paid therefor. It is not very material that the car was shipped to Saranac Lake in the name of the defendants, except so far as it tends to show that the defendants intended to keep the possession and control of it until paid for, and that the right of inspection still continued in the plaintiff. The defendants had the right to ship the property in such a manner that they would receive the money at the time they parted with control, and the drawing of a draft with a bill of lading attached, if in the ordinary course of business and accompanied with a right of inspection, was not an unreasonable precaution for defendants to take, and the plaintiff was not justified for that reason in refusing to accept.

It does not appear whether there were banks at Saranac Lake through which the draft might be drawn, or whether the bill of lading might have been so arranged that payment could be made to the railroad company when the car arrived. We cannot say from the record whether it was in the usual course of business to draw a draft upon a bank 50 miles distant with reference to property of such a perishable nature at that time of year. The plaintiff was justified in refusing to accept the property as shipped to him without an opportunity to examine it. He was notified by the defendants that in two respects the order was not complied with, in that the cabbages were not trimmed and the onions not sacked. And these two omissions emphasized the propriety at least of an inspection of the property before payment. By shipping the property in such a manner, and refusing the plain-

tiff an opportunity to inspect it before he paid for it, the defendants violated their contract with the plaintiff, and became liable to repay him the $100 which he had paid. The transaction with Greene is not of great importance, except as it tends to show that the plaintiff eventually had the property, and therefore suffered no damage by reason of the defendants' failure to deliver it according to the terms of the original contract. The property was purchased by Greene, and he paid the defendants the purchase price, and there is no reason why they should receive the purchase price and also retain the $100 which plaintiff had paid them upon the contract which they refused to perform.

The record does not justify the contention that by trick the plaintiff refused to take the property under the contract, so that he could buy it at a less price through Greene. Plaintiff claimed the defendants had violated their contract. They claimed he was the one in default, and that they were selling the property and would charge him with the difference in price. The plaintiff had a right to protect himself by seeing that the property brought a fair price, and he also had a right to obtain the property if the defendants had violated their contract, so that he could have it to fulfill the contracts which he had made relying upon his contract with the defendants.

These considerations require a reversal of the judgment. As a new trial is to be had, it is proper to refer to two erroneous rulings, so that they may not occur upon a second trial. The plaintiff had the right to show that Greene inspected the property before he purchased the same. This bore upon the plaintiff's good faith in the matter, and perhaps had a bearing upon the quality of the property. The plaintiff should have been permitted to show the quality of the property in the car; for, if the defendants had not sent as good a quality as they agreed, plaintiff clearly had the right to refuse to accept upon that ground.

The judgment should therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.