PLUMB v. J. W. HALLAUER & SONS CO.

(Supreme Court, Appellate Division, Third Department.    May 3, 1911.)

1. SALES (§ 23*)—REQUISITES OF CONTRACT—MUTUALITY.

Where defendant's agent, having agreed with plaintiff, a produce buyer and shipper, on the price of apples,. told plaintiff that defendant would take as many as plaintiff could load and ship, and in response to plaintiff's inquiry, "What does that mean, suppose I load and ship 15 or 20 cars?" said they wanted all the apples they could get, and the two agreed on the manner of payment, this did not constitute a valid binding contract on the defendant to accept and pay for any number of car loads of apples, or to accept and pay for at least 15 car loads, nor did it become binding as to car loads bought by the plaintiff for shipment before receipt of a telegram advising him that defendant would accept no more, which car loads he offered to ship after the telegram.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 44–48; Dec. Dig. § 23.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. SALES (§ 168*)—PERFORMANCE OF CONTRACT—DELIVERY AND ACCEPTANCE—. RIGHT TO INSPECT.

On the sale of a car load of apples, a portion of the price to be paid on sight draft attached with the bill of lading, the buyer is not entitled to inspection of the apples before accepting them, as he would be under an ordinary executory contract for the sale of goods for cash on delivery; the agreement as to the manner of payment being a waiver of such right.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 403–408; Dec. Dig. § 168.*]

3. SALES (§ 272*)—WARRANTY—IMPLIED WARRANTY—MERCHANTABLE QUALITY OF GOODS.

Under an executory contract for the shipment and sale of apples, there was an implied warranty that they would be merchantable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 747; Dec. Dig. § 272.*]

4. SALES (§ 266*)—WARRANTY—EFFECT OF ACCEPTANCE OF GOODS.

Where a contract of sale is executed and the goods are paid for before delivery, an implied warranty as to quality survives, and the buyer has a right of action against the seller for breach thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 754; Dec. Dig. § 266.*]

5. SALES (§ 404*)—REMEDY OF BUYER—ACTION FOR BREACH OF CONTRACT.

An action always lies for breach of contract of sale, irrespective of the character of the warranty, unless it is waived.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1146; Dec. Dig. § 404.*]

Kellogg, J., dissenting, and Betts. J., dissenting in part.

Appeal from Trial Term, Franklin County.

Action by William H. Plumb against the J. W. Hallauer & Sons Company. From a judgment on a nonsuit directed by the court, and from an order denying a motion for a new trial, plaintiff appeals. Reversed, and new trial granted.

See, also, 130 App. Div. 284, 114 N. Y. Supp. 474.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

John P. Kellas, for appellant.
Peter G. Smith, for respondent.

HOUGHTON, J.   The action is to recover damages for an alleged breach of contract in refusing to accept and pay for five car loads of apples, and a balance claimed to be due on eight car loads delivered and accepted. The plaintiff is a produce buyer and shipper, doing business in Franklin county, and the defendant operates an evaporating and canning factory at Webster, in the western part of the state. The contract was oral, and the plaintiff testified that the defendant's agent asked him if he had apples to sell, and, upon his replying that he was a dealer and did have if the price was satisfactory, the defendant finally agreed to pay him 70 cents per hundred pounds for mixed apples and 75 cents per hundred pounds for peeling apples delivered on board cars at Webster, and that upon his stating that he had two car loads on hand and

inquiring how much more defendant wanted the agent replied that the defendant was in need of apples, and would take as many as he could load and ship. The plaintiff inquired, "What does that mean, suppose I load and ship fifteen or twenty cars," to which the agent replied, "That is all right. We want them. We want all the apples we can get." The plaintiff inquired as to the manner of payment, and testifies that it was agreed that the plaintiff should draw a sight draft for 50 cents per hundred pounds according to his weighing, and attach it to the bill of lading of each car, and that the defendant would pay the freight and send plaintiff a check for the balance, if any. The plaintiff shipped the two car loads on hand immediately and proceeded to buy other car loads, and shipped six more, all with draft attached to bill of lading as agreed, which drafts the defendant paid as well as the freight charges. On the 2d of November the defendant telegraphed the plaintiff to ship no more apples. On the 29th of October the plaintiff had shipped a car, known as car No. 61878, with draft attached to bill of lading, which was in transit at the time of the sending and receipt of the telegram. The plaintiff had purchased of various growers at the time the telegram was received four car loads more of apples, which, disregarding the telegram, he tendered to the defendant, and the defendant refused to receive them on the ground that it had purchased no specific number of car loads, and had informed the plaintiff to make no further shipments before shipment was made.

With respect to car No. 61878, which was shipped before the telegram was sent, because some prior apples were claimed to have been unmerchantable, the defendant demanded the right to inspect before paying the draft. The plaintiff refused to permit such inspection, and because of that the defendant refused to accept. The plaintiff sold the apples for defendant's account, receiving less than the contract price.

The learned trial court held that the contract was unilateral, in that the plaintiff was not bound to furnish any particular number of car loads, and therefore the defendant was not obliged to accept any particular number, and that hence the defendant was justified in refusing to accept the four car loads shipped after the telegram notifying the plaintiff that it would receive no more, and that with respect to the one car shipped before notification the defendant was entitled to inspection, and upon the plaintiff refusing it, the defendant was justified in declining to accept delivery. The plaintiff did not prove any balance due for the eight car loads received above the 50 cents per hundred pounds and the freight charges, and a nonsuit as to the entire cause was granted.

[1] We think there was no valid binding contract upon the defendant to accept and pay for any number of car loads of apples, or to accept and pay for at least 15 car loads. The plaintiff was under no obligation to buy and ship to the defendant any quantity of apples in addition to the two car loads which he had on hand. The defendant would have had no cause of action against the plaintiff if he had refused to buy and ship more apples, nor did it furnish

any consideration for the contract, or make it binding, that the plaintiff did, in fact, buy more apples and offer to ship them to the defendant after the telegram apprising him that the defendant would accept no more. The price being satisfactory, the plaintiff desired to sell as many apples as he could, but the defendant did not agree to take as many as he might buy. It is true by contracting with producers and buying apples with the intention of shipping them to the defendant the plaintiff may have bought more apples and put himself in a different position than he would have occupied if he had had no talk at all with the defendant, but we do not think that fact furnished a consideration which made it binding upon the defendant to accept such apples as the plaintiff chose to offer after the defendant had canceled its order, and notified the plaintiff that it desired no further shipments. Such conclusion is entirely within the principle laid down in Chicago & Great Eastern Railway Company v. Dane, 43 N. Y. 240; White v. Corlies, 46 N. Y. 467; Quick v. Wheeler, 78 N. Y. 300; Commercial Wood & Cement Co. v. Northampton P. C. Co., 115 App. Div. 388, 100 N. Y. Supp. 960; Booth v. Milliken, 127 App. Div. 522, 111 N. Y. Supp. 791. The plaintiff was not a manufacturer, and the contract was not one to purchase the output of a plant or of a mill for a given time at a given price, which would be entirely valid, nor was the contract to furnish the defendant with all the apples its factory might require which would have been a good agreement. Wells v. Alexander, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218. Nor was it one founded on mutual promises, the doing of one of which formed a consideration for performance of the other. The contract was rather to purchase all the apples the plaintiff desired to sell at a certain price or all the purchaser desired to take at a given price. Such contract under all the authorities is held to be void because it does not bind the one to deliver any specific quantity nor the other to accept any definite amount. While it is good so far as actually executed (Holtz v. Schmidt, 59 N. Y. 253), it has no binding force until executed, and then only so far as it has been performed. The learned trial court therefore was entirely right in holding that the plaintiff had no cause of action for damages because the defendant refused to accept the four car loads after the telegram of November 2d, directing no further shipments.

[2] With respect to the car load shipped before such telegram in car No. 61878, and which the defendant refused to accept because the plaintiff declined to permit an inspection, we are of opinion that the defendant was not entitled to inspect, and that, therefore, the nonsuit as to that branch of the case was error.

[3] The apples were to be delivered to the defendant at Webster, and there was an implied warranty on the part of the plaintiff that they would be merchantable. Under an ordinary executory contract for the sale of goods to be delivered by the seller to the buyer at a distant point, although for cash on delivery, the buyer has the right of inspection, and the seller must accord him reasonable opportunity to inspect before he is bound to accept. Pier-

son v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831; Plumb v. Bridge, 128 App. Div. 651, 113 N. Y. Supp. 92. Although the buyer has this right, and although it is his duty to make such inspection under pain of losing the benefit of certain implied warranties if he does not make it, still he has the right, if he chooses, to make a contract that he will pay the purchase price before inspection. We think the defendant in the present case made a contract to pay at least 50 cents per hundred pounds according to the plaintiff's weighing before delivery and before inspection. The agreement as testified to by the plaintiff showed that he desired payment at the time and place of shipment. This the defendant did not wish to do, but proposed to pay 50 cents per hundred by sight draft to be attached to the bill of lading. The defendant paid eight drafts so attached, and realized that it had no right of inspection before paying such drafts, because it telegraphed the plaintiff, asking permission to inspect the car in question before acceptance. When the defendant made a bargain to pay a sight draft representing 50 cents per hundred, to be attached to the bill of lading, it realized that it could not obtain possession of the bill of lading without paying the draft, and that it could not make an inspection without the bill of lading, because the carrier would not be justified in permitting inspection without its production. The court can take judicial notice of the fact that the draft would be received by mail before the freight could arrive, and, being payable at sight, must be paid before the freight could be delivered. In substance the contract was, according to the plaintiff's version, that the defendant would pay 50 cents per hundred on each car load by paying a sight draft before delivery and the balance, less freight charges by check after delivery. Such a contract precludes the idea of inspection before payment of the draft and taking possession of the property. When the agreement of purchase is that the buyer will pay the purchase price by sight draft to be attached to the bill of lading, he is not entitled to an inspection of the property before paying the draft, and he cannot refuse to accept the property because such inspection is refused. Whitney v. McLean, 4 App. Div. 449, 38 N. Y. Supp. 793; Thick v. Detroit & C. Ry., 137 Mich. 708, 101 N. W. 64, 109 Am. St. Rep. 694. Whitney v. McLean, supra, is precisely in point. The defendants there agreed to purchase a car load of potatoes to be shipped from North Carolina at a certain price, with sight draft for purchase price attached to bill of lading. They refused to pay the draft or accept the shipment without inspection, and the court held that they were not entitled to inspect before payment, and were liable for damages for refusal to accept.

Such rule is not in conflict with the holding of this court in Plumb v. Bridge, supra. The facts in that case were quite different from those in the present. It did not appear in that case, although the buyer had paid part of the purchase price and a draft was attached to the bill of lading for the balance, that there was any definite understanding that the full purchase price should be paid before delivery. On the contrary, the balance was to be paid

on arrival of the car, and the sight draft was attached to the bill of lading without any special agreement therefor. In addition, the seller notified the buyer that the shipment in two particulars was not according to contract and attempted to remedy it, which cir-. cumstance was deemed to emphasize the right of the buyer to inspection before paying the balance of the price agreed upon.

[4] Nor does the rule work any special hardship on the buyer. His right of inspection and to damages for breach of contract still remains after he has paid the purchase price by paying the draft. Although he could not inspect before paying, he has a reasonable time for inspection after he obtains possession of the goods. If there be an express warranty, of course, he has his remedy on such warranty, and, if there be only an implied one, the contract being executed, instead of executory, the implied warranty survives his acceptance. Where the contract is executed and the goods are paid for before delivery, an implied warranty as to quality survives, and the buyer has a right of action against the seller for damages for breach. Muller v. Eno, 14 N. Y. 597. It is only where the contract is executory and the buyer is bound to inspect before acceptance and payment that an implied warranty does not survive. Reed v. Randall, 29 N. Y. 362, 86 Am. Dec. 305.

[5] An action always lies for breach of contract of sale, irrespective of the character of the warranty unless it is waived. Tompkins v. Lamb, 121 App. Div. 366, 106 N. Y. Supp. 6.

What the contract as to payment was and whether the apples in car No. 61878 were in fact merchantable can be determined upon the new trial which we feel should be granted.

If these views are correct, it follows that the judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event.

SMITH, P. J., and SEWELL, J., concur.

BETTS, J. I concur with Justice HOUGHTON'S opinion as to the reversal of the judgment here in reference to the car load which the defendant refused to accept because an inspection was not permitted. I do not agree with him as to the other four cars. The defendant's agent went to the plaintiff, a dealer in apples, in an apple country, late in the apple season, and desired to buy apples of the plaintiff. He stated the price which was satisfactory to the plaintiff, and stated the defendant would take as many apples as the plaintiff could load and ship. At the suggestion of the plaintiff, this number was limited to 15 or 20 car loads, whereupon the plaintiff proceeded to load and ship several car loads which were paid for and these 5 car loads which are in dispute, but did not get to the minimum number of 15.

I think it was fairly a question for the jury whether there was not a completed contract, and whether the minds of the parties did not meet upon the offer made by the defendant's agent, and whether there was not an acceptance on the part of the plaintiff as to the proposition and an agreement to furnish 15 or 20 car loads

of apples, so far as was disclosed by the conversation had and the acts of the plaintiff and defendant directly thereafter; or the question could have been submitted to the jury as to whether the plaintiff did not agree to get as many car loads, limited by 15 or 20, as he could procure in that vicinity at that time of year and ship to the defendant. In either event, if jury found for plaintiff, I think the plaintiff would be entitled to recover such damages as he might be able to show from the refusal of the defendant to receive the apples sent him.

Where there is any doubt about the terms of a contract, the question becomes a mixed question of law and fact. Trustees of East Hampton v. Vail, 151 N. Y. 463, 45 N. E. 1030.

I think the judgment should be reversed in its entirety and a new trial had.

KELLOGG, J., dissents upon the ground that the defendant properly refused to accept the car load after inspection was denied.