*Z.*

## Louis Price and Joe Lowe, trading as Starch Products Company, Appellants, v. Neiman Brothers Company, Appellee.

### Gen. No. 30,700.

1. SALES—*sufficiency of evidence to show waiver by vendees of right to inspect goods before acceptance.* Where a written contract for the purchase and sale of merchandise to be shipped from Holland to New York City provided that any question of the quality of the goods must be raised before their removal from the docks at destination, it was a reasonable inference that if the goods were not inspected at the docks, the right of inspection was waived.

2. SALES—*time when title passes as to goods shipped f. o. b. shipping point.* If a contract provides that the shipment is to be made f. o. b. the point of shipment, both at common law and under the Uniform Sales Act the title to the goods passes to the buyer on delivery thereof to the carrier.

3. SALES—*effect of Uniform Sales Act upon right of buyer to inspect goods.* Uniform Sales Act § 47 does not alter the common-law rule as to the right of a buyer to inspection of the goods purchased.

4. SALES—*sufficiency of evidence to show intention of vendees to waive inspection of goods before acceptance and payment.* Where a written contract for the purchase and sale of merchandise to be shipped from Holland to Chicago via New York City provided for an inspection of the goods at the docks in New York City but the vendees made none there, and the contract further provided for payment by a sight draft drawn against the bill of lading, evidence held to show an intention on the part of the vendees to waive inspection.

Appeal by plaintiffs from the Municipal Court of Chicago; the Hon. WILLIAM E. VINER, Judge, presiding. Heard in the first di-

vision of this court for the first district at the October term, 1925. Reversed and remanded. Opinion filed March 29, 1926.

NETHERTON & NETHERTON, for appellants.

LARAMIE & SHERWIN, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

This appeal is prosecuted by plaintiffs to reverse a judgment for costs entered against plaintiffs and in favor of defendant upon the finding of the court.

Plaintiffs below are appellants here. They sued for damages alleged to have been sustained through the refusal of defendant to take and pay for 300 bags of caraway seed, for which defendant had given a written order.

In the course of a colloquy between the court and counsel, there was a request by plaintiffs for a nonsuit, which was denied, and a finding as heretofore set forth. No evidence was offered in behalf of defendant, and the facts of the case are practically undisputed.

The evidence tends to show that plaintiffs who are a copartnership of New York entered into a contract in writing with the defendant, a corporation doing business at Chicago, Illinois, which was as follows:

"Standard Arrival Contract of the American Spice Trade Association As Amended, effective on and after Feb. 29, 1924.

"Starch Products Co., 291 Broadway, New York, February 8, 1924.

"Sold for account of M Starch Products Co., to M. Neiman Bros., 3100 W. Polk St., Chicago, Ill.

"Quantity 300 bags.

Article Prime Dutch Caraway Seed.

Quality f. a. q. of the season.

Approval.   Any question respecting quality to be made before removal from dock, or, as provided in Rule 8.

Price 14¼c per pound, duty paid. f. o. b. New York. Shipment from Holland.

By Steamer or Steamers during August and/or September, 1924, direct or indirect to New York.

Terms net cash, sight draft against bill of lading.

Payable in Gold, or its equivalent in New York Funds.

Weights gross for net-shipping.

Tares none.

Insurance for account of seller.

"All questions arising out of this contract shall be subject to the rules of the American Spice Trade Association, printed on the reverse of this contract.

"Buyer: Accepted Neiman Bros. Co. by Louis G. Neiman, Starch Products Co."

On October 4, 1924, the plaintiffs delivered the caraway seed to a common carrier at New York, and the carrier issued its uniform bill of lading of that date, acknowledging receipt of the goods in apparent good order, contents and conditions of contents of package unknown.

The bill of lading further provided that the surrender of the bill of lading properly indorsed should be required before the delivery of the property; that inspection of the property covered by the bill of lading would not be permitted unless permission was indorsed on the original bill of lading, or given in writing by the shipper.   It appears from the bill of lading that the seed was consigned to the order of the plaintiffs at Chicago with directions to notify the defendant at 3100 West Polk Street, Chicago.

At the same time the plaintiffs drew a sight draft on defendant for the purchase price of the seed, amounting to $4,615.86, attached the same to the bill of lading and forwarded it to the Central Manufac-

160    APPELLATE COURTS OF ILLINOIS.

Price et al. v. Neiman Bros. Co., 240 Ill. App. 157.

turing District Bank at Chicago, to whose order the draft was payable. The goods arrived in Chicago, and defendant was notified, whereupon on October 9, 1924, it telegraphed the plaintiffs at New York as follows:

"Just received notice from N. Y. C. R. R. that seed arrived in Chicago. We desire inspection. Instruct railroad at once to permit us inspection."

Plaintiffs replied:

"Answering your telegram you bought sight draft basis therefore expect your prompt payment."

The defendant refused to honor the draft, and on October 28, 1924, attorneys for plaintiffs wrote calling attention to the telegrams which had passed between the parties, and stating:

"As counsel for Starch Products Co. we have to advise you that our client demands strict compliance on your part with your contract of purchase, dated February 8, 1924, the term therein stated being 'net cash sight draft against bill of lading.' For your information, the 300 bags of Prime Dutch Caraway Seed F. a. q. of the season purchased by you under your said contract of February 8, 1924, has been stored by the railroad company at the Taylor Street Freight House, 118 West Taylor Street, Chicago, and on behalf of the Starch Products Co., we demand that you take up the sight draft at once and remove the merchandise from warehouse; otherwise, within five days from this date our client will be compelled to avail itself of such remedies as the law provided for its protection."

The colloquy between court and the counsel indicates that it was the opinion of the court that the defendant was entitled to an inspection of the goods before honoring the draft, and the defendant in error argues to the same effect, citing chapter 121a, section 16, ¶ 19, Callaghan's Ill. St. Ann.; chapter 121a, section 47, ¶ 50, of the same statute; *Brandenstein v. Geo.*

*Rasmussen Co.*, 192 Ill. App. 545, and *Wiener v. Lincoln Crushed Stone Co.*, 224 Ill. App. 146.

The Uniform Sales Act, which became the law of this state on July 1, 1915, is, we think, controlling, and *Brandenstein v. Geo. Rasmussen Co., supra,* which was decided prior to that time and upon a contract made several years prior to that time, is of course not applicable or controlling. *Wiener v. Lincoln Crushed Stone Co., supra,* was decided subsequent to the enactment of the Uniform Sales Act, but the contract of sale, which was there construed by the court, is clearly distinguishable from the contract which is here to be construed.

The sections of the Sales Act, applicable to the facts which appear in this record, are sections 20, 46 and 47 of chapter 121a, Callaghan's Ill. St. Ann., Vol. 7.

Paragraph 2 of section 20, provides in substance that where goods are shipped, and by the bill of lading the goods are deliverable to the seller, or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract.

Section 46 provides that where, in pursuance of a contract to sell, or a sale, the seller is authorized or required to send the goods to the buyer or not, for the purpose of transmission to the buyer is deemed to be a delivery of the goods to the buyer, except in the cases provided for in section 19, rule 5, or unless a contrary intent appears.

Section 47 provides that where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of exam-

ining them for the purpose of ascertaining whether they are in conformity with the contract.

Paragraph 3 of said section, however, provides that: "Where goods are delivered to a carrier by the seller, in accordance with an order from or agreement with the buyer, upon the terms that the goods shall not be delivered by the carrier to the buyer until he has paid the price, whether such terms are indicated by marking the goods with the words 'collect on delivery,' or otherwise, the buyer is not entitled to examine the goods before payment of the price in the absence of agreement permitting such examination."

In the last analysis, the question is one of the intention of the parties. The written contract here in evidence provides that the shipment is from Holland to New York, and that any question as to the quality must be raised before the removal from the docks. From this provision of the contract, we think it would be reasonably inferred that if inspection was not made there, it would be waived.

Again the contract provides that the terms are net cash, sight draft against the bill of lading, and such an agreement has, irrespective of the provisions of the Uniform Sales Act, been construed to mean that the draft must be paid before the buyer has the opportunity for inspection. *Whitney v. McLean,* 38 N. Y. Supp. 793; *Plumb v. J. W. Hallauer & Sons Co.,* 145 App. Div. 20, 130 N. Y. Supp. 147.

It is undoubtedly the general rule of the common law, as well as under the Uniform Sales Act, that if a contract provides that shipment should be made f. o. b. at the point of shipment, the title thereto passes to the buyer at the time of delivery to the carrier. *Runkle Co. v. Twin City Produce Co.,* 224 Ill. App. 13; *Sparta Produce Exchange v. Wilson & Co.,* 223 Ill. App. 126.

Construing section 47 of the Sales Act, Williston on Sales, second edition, vol. 2, § 479, p. 1246, says:

"The right of inspection may, of course, be given up by the buyer and the surrender need not be in express terms. Any agreement, the performance of which, according to its terms, is or may be inconsistent with inspection before payment of the price, will prevent the existence of the condition. A common illustration of such an agreement is a contract which provides for payment of the price on receiving documents of title. Such an agreement generally indicates the expectation of the parties that the goods will be in the hands of a bailee at the time the price becomes payable. The documents are likely to arrive before the goods if the transit is a long one. Often, it is true, inspection is expressly provided for. Even if it is not, though the buyer must pay the price before inspection, if the goods do not conform to the contract the buyer clearly may recover the price which he has paid. Moreover, the contract may expressly provide for inspection before payment of the draft, or usage may establish the right.''

Section 47 of the Uniform Sales Act has not altered the rules of the common law. Williston on Sales, second edition, § 470, p. 1229.

In *Lawder & Sons Co. v. Albert Mackie Grocery Co.,* 97 Md. 1, Lawder & Sons of Baltimore, Maryland, sold to Mackie Grocery Co., of New Orleans, Louisiana, 700 cases of tomatoes. The contract stated, "terms cash less one and one-half per cent, buyer to give shipping instructions when requested by seller. To be delivered as packed during season of 1901, f. o. b. Baltimore."

Question was raised under this contract as to the right of the vendee to inspect the goods before acceptance. The court held that the mere fact that the buyer had the right to inspect the goods would not necessarily mean that the inspection was to be made at the residence or place of business of the buyer, and that where the contract provides for delivery to a partic-

ular place, the vendee was obligated to accept or reject at that place. unless otherwise provided for in the contract.

In *Brown v. Raritan Chemical Works,* 188 App. Div. 578, 177 N. Y. Supp. 309, the vendee sued the vendor upon his agreement to sell and deliver three hundred kegs of crystal chlorate of potash at 60 cents per pound, immediate delivery, terms net cash, and the defense was that the vendor had duly presented to the plaintiff a delivery order covering the potash crystals and demanded payment, but that plaintiff refused to accept the delivery order or the goods or to make payment therefore, unless an inspection of the same was permitted by the defendant; that the vendor issued a permit, but that the vendee failed to make the inspection within a reasonable time and that the contract was thereby breached by the vendee. The court said that if the vendee had a right to an inspection, the question of whether the opportunity offered by the defendant was a reasonable one would have been an issue of fact for the jury, but the court was of the opinion that under the contract the vendee did not have any right to an inspection because the terms of the same were net cash against delivery order and that these terms conclusively negatived any idea that an inspection was to be allowed to them; that by agreeing to pay cash on production of the delivery order, they effectually waived any right to examine the goods themselves.

In *Cochran v. Chetopa Mill & Elevator Co.,* 88 Ark. 343, 114 S. W. 711, the plaintiff sued the defendant for failure to deliver to him 400 sacks of corn chops, which the plaintiff had purchased from defendant for a certain price, no conditions being annexed to the order or acceptance, and it appearing that the vendee had refused to pay a draft drawn against him for the amount of the goods until he had inspected the same,

it was held that he had breached the contract and could not recover.

In the contract here sued on, it appears that an inspection was provided for by agreement of the parties at New York. The defendant did not avail himself of this opportunity, and we think must, therefore, be held to have waived it. There was no provision in the contract for an inspection at Chicago, and defendant was therefore not entitled to it at Chicago.

Moreover, the provision of the contract for payment by a sight draft drawn against the bill of lading would further indicate the intention of the parties to waive an inspection.

We think, therefore, that the court erred in finding for the defendant and in entering judgment for it, and for that error, the judgment will be reversed and the cause remanded for another trial.

*Reversed and remanded.*

JOHNSTON and McSURELY, JJ., concur.