COCHRAN *v.* CHETOPA MILL & ELEVATOR COMPANY.

Opinion delivered December 7, 1908.

SALE OF CHATTELS—RESCISSION.—Where, after ordering goods to be paid for on delivery, the vendee refused to receive them until he had inspected them and found them satisfactory, his demand amounted to a refusal to abide by the contract, and relieved the vendor from its obligation.

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; affirmed.

STATEMENT. BY THE COURT.

H. K. Cochran brought an action against the Chetopa Mill & Elevator Company, before a justice of the peace of Pulaski County, to recover damages amounting to $32, which he claimed to have sustained by reason of defendant's failure to deliver to him 400 sacks of corn chops which he had purchased from it. In a trial the defendant recovered judgment, and the plaintiff appealed to the Pulaski Circuit Court; and a trial before a jury in

the circuit court was attended with the same result; and plaintiff again appealed.

In the trial in the circuit court appellant testified that he received a postal card from appellee, stating that it had some corn chops, and asked him to make a bid for them, and that he sent it the following telegram:

"May 11, 1907.
"Chetopa Mill & Elevator Co., Chetopa, Kan.,

"Your letter of the 8th, offer $1.08 delivered 500 100 pure corn chops, delivered immediately, inspection privileges, answer by telegraph immediately.

"H. K. Cochran."

This telegram was followed by letter.

"Little Rock, Ark., May 11, 1907.
"Chetopa Mill Co., Chetopa, Kansas:

"Gentlemen: We have your postal offering us 400 sacks chops at $1.10 delivered here, and we have wired you making you a counter offer of $1.08 delivered for immediate shipment and for inspection privileges on arrival of car. We now beg to confirm and wait your acceptance.

"Yours truly,
"H. K. Cochran."

On the same day the appellant received the following translated telegram:

"Chetopa, Kan., May 11, 1907.
"H. K. Cochran, Little Rock, Arkansas:

"Can sell one car load 400 sacks at $1.10 per sack now in Little Rock, inspection privileges subject our wire confirmation. Answer by telegram immediately.

"Chetopa Mill & Elevator Co."

And on the same day appellant wired as follows:

"Little Rock, Ark., May 11, 1907.
"Chetopa Mill & Elevator Co., Chetopa, Kan.:

"Accept 400 $1.10 delivered our track subject Monday's inpection satisfactory.

"H. K. Cochran."

After which appellant wrote appellee as follows:

"Little Rock, Ark., May 11, 1907.
"Chetopa Mill & Elevator Co., Chetopa, Kansas:

"Dear Sirs:—Your wire just to us 8 P. M., offering car corn chops 1.10 for immediate delivery, and we are writing you our acceptance of 400 sacks subject to chops proving satisfactory when inspection is made Monday. If the chops are good, and the weight is satisfactory, we will wire you Monday, and confirm the purchase, whereupon we will ask that you arrange for an immediate delivery.

"Yours very truly,
"H. K. Cochran.

"Quote lowest for car of mix corn."

At 12:52 the following day, May 12, 1907, the following telegram was received from the appellee:

"Chetopa, Kansas, May 12, 1907.
"H. K. Cochran, Little Rock, Ark.:

"Examine twenty-six seven eight Rock Island; wire acceptance or refusal early morning at a dollar ten per sack.

"Chetopa Mill & Elevator Co."

And in due course of mail the appellant received the following letter from the appellee:

"Chetopa, Kansas, May 12, 1907.
"H. K. Cochran, Little Rock, Arkansas:

"Dear Sir—An exchange of telegram has resulted in our selling to you 410 sacks of pure corn chops in second-hand bags at $1.10 per sack, f. o. b. Little Rock, with your privilege to examine the car 26780 R. I., and wire us Monday morning your acceptance or refusal. As this is a splendid car of chop, we have no doubt that you will take it. The freight on this car is paid, and you will find a draft for $393.60, at, we think, the Exchange Bank, which you will please pay and get B. Lading, and send us the balance when you unload the car. Three of us can make affidavit to the count of 410 sacks, and our count will govern unless you have them checked out by the railroad company and any shortage from our count noted on the expense bill. When we hear from you Monday, we will wire Mr. C. E. Jones, agent, to deliver you the car. The way the market is flirting and soaring, we are almost afraid to price stuff. For next day it is two or

three cents higher. We only have about 5,000 bushels more corn, and it is hard to buy. However, when you want any corn or chops, we will be pleased to hear from you.

"Yours truly,

"Chetopa Mill & Elevator Co."

On the following day, the 13th of May, 1907, the appellant and appellee wrote the two following letters:

"Chetopa, Kansas, May 13, 1907.

"H. K. Cochran, Little Rock, Ark.:

"Dear Sir—We got a letter from the Darrough Warehouse Company, saying they had paid the draft against car of chops, and were holding for our disposition. We wired them that we had sold the car to you, subject to your inspection, and if you wanted the car to deliver you the bill of lading. We have another bid of $1.10 on the car, and corn chops is still higher today, and we feel quite certain you will take the car. If not, wire us at once, and we will sell it to another dealer.

"Yours truly,

"Chetopa Mill & Elevator Co."

"Little Rock, Ark., May 13, 1907.

"Messrs. Chetopa Mill & Elevator Co., Chetopa, Kansas:

"Gentlemen: We have your wire dated Sunday, asking us to examine car 26780 R. I. and wire acceptance or refusal Monday morning at $1.10. We called the Rock Island early this forenoon, and asked them for an examination of the car, whereupon they stated that the car had been transferred from the north yards, which are across the river, and it is impossible for us to make an examination. We are therefore wiring you this forenoon that the car can not be examined, but as soon as the railroad transfers it to this side of the river we will make an examination and wire you our conclusion. In the mean time you can consider the car sold if the chops prove satisfactory. It may be two or three days, however, before we get an examination of the car, as everybody is having trouble getting cars pulled from the north side.

"Yours truly,

"H. K. Cochran."

Appellant wired appellee as follows:

"May 14, 1907.

"Darrough unloaded car chops on eleventh. Ship our car at once please, or order this car delivered to us.

"H. K. Cochran."

On the same day the appellant wrote appellee as follows:

"Little Rock, Arkansas, May 14, 1907.

"Chetopa Mill & Elevator Co., Chetopa, Kansas:

"Gentlemen—Referring to your telegram of the 11th and 12th, and our telegram and letter to you of the 11th and 13th, we beg to say our information from the railroad company on the 13th, when we wrote you and wired you, was that car 26780 R. I. was in North Little Rock, and that same would be placed so that we could examine it. Since then up to this very minute we have been struggling with the railroad company to get them to place the car where we could examine it, and are now informed that the car was unloaded on the 11th by Darrough Warehouse Company, who surrendered the bill of lading for this car. We beg by this means to ask that you ship us immediately 400 100 pound pure corn chops, for which we are to pay you $1.10 and this for immediate shipment. We have relied upon this car of chops to fill our orders, and do not understand how it is possible that you have permitted the Darrough Warehouse Company to have the chops. Please let the car come forward at once and thereby greatly oblige us.

"Yours truly,

"H. K. Cochran."

On the following day appellee wired:

"Chetopa, Kansas, May 15, 1907.

"H. K. Cochran, Little Rock.

"Will ship another car chops as soon as can get another set.

"Chetopa Mill & Elevator Co."

And on the same day the appellee wrote:

"Chetopa, Kansas, May 15, 1907.

"H. K. Cochran, Little Rock, Arkansas:

"Dear Sir: We received your wire this morning, advising that Darrough Warehouse Company had unloaded the car of chops we intended for you to examine. This is the first advice

we have had that the car was unloaded. We asked the Dar-rough Brothers to wire us a bid on the car when it arrived, which they did, but we did not accept and wired them to deliver car to you if you wished it. Since they have unloaded the car, we thought best to let them have it and ship you another car, and we are wiring you that we will ship you a car just as soon as we can get a car set. Will try to get the car out tomorrow.

"Yours truly,

"Chetopa Mill & Elevator Co.

"We have an order at $1.15 to a point taking the same rate as Little Rock."

The appellant wrote appellee some three letters, urging it to ship the car of chops as per contract. On May 27, 1907, appellee wrote that it had been trying to get a car on Katy. That it could have shipped sooner on the Missouri Pacific, but supposed appellant wanted the shipment on the M. K. & T.

On May 28, 1907, appellant wrote acknowledging the receipt of the letter of May 27, 1907, stating that he did not say that he preferred any particular routing, and as the chops were sold delivered the appellee had the liberty to route as he pleased.

On the seventh of June, 1907, appellant sent the following telegram to appellee:

"Chetopa Mill & Elevator Co., Chetopa, Kansas:

"Will pay original draft upon favorable inspection. Car arrived today.

"H. K. Cochran."

On June 9, 1907, appellee wrote to appellant that it was surprised to receive notice that draft for 440 with bill of lading attached for car of chops was protested. Did not agree to give privilege of examining car before paying draft. "If we hear from you to the effect that you will pay draft and protest fees, will return draft; otherwise will take for granted that you do not want the car on these terms, and we will sell to another dealer who will pay drafts when presented."

On June 10, 1907, appellee wrote to appellant that "the draft against car 16383 M. K. & T. was returned today with $4.15 protest fees on it. We are returning it to you today with protest fees added and have sent a letter to the bank there that if you

refuse to pay the draft, to deliver the draft and bill of lading tc another dealer there."

Appellant refused to pay the draft, and did not get the chops. Appellant "went into the open market and obtained quotations from all the dealers and finally bought from Bunch 400 sacks at $1.18 per sack and charged appellee with the difference between contract price, which was $1.10," and the $1.18, and brought this action for the same.

*James A. Comer,* for appellant.

It appears clear from the letters and telegrams between the parties that the shipment was to be made with privilege of inspection; yet, if there was any question as to what the parties meant, then it was a question for the jury, and not for the court. 35 Ark. 156. Where there is a conflict in the evidence, or where there is any evidence tending to establish an issue, it is error to take the case from the jury. 70 Ark. 74; 63 Ark. 94. See, also, 76 Ark. 520.

BATTLE, J., (after stating the facts.) After appellant failed to get the car load of chops in Little Rock, he, on the 14th day of May, 1907, ordered appellee to ship him 400 sacks of corn chops, agreeing to pay $1.10 a sack for the same. On the day following appellee, by telegram, agreed to do so. No condition was annexed to the order or acceptance. But, upon appellee drawing a draft upon him for the purchase price of the chops, appellant refused to pay it until he had inspected the chops and found them satisfactory, and appellee refused to deliver the chops until its draft for the purchase money was paid, and no sale was made. As the goods were sold by the manufacturer without inspection, the law implied a warranty that the chops were merchantable, and reasonably fit for the purpose for which they were intended. (*Main* v. *Dearing,* 73 Ark. 470, and cases cited; *Main* v. *El Dorado Dry Goods Co.,* 83 Ark. 15.) This was, in part, the legal effect of the contract as made. But appellant sought to interpolate into it the right to inspect the chops and the right to reject them if the inspection was not satisfactory to himself. As he sought to amend the contract, there was to be no sale until such inspection was made and proved satisfactory to him. His demand and contention amounted to a refusal to abide by his con-

tract as made, the effect of which was to relieve appellee of its obligation to appellant, if it elected to so treat the contract.

Judgment affirmed.

Wood, J., dissenting.