## Collins v. Swan-Day Lumber Company, et al.

(Decided March 27, 1914.)

### Appeal from Letcher Circuit Court.

1. Contracts—Simultaneously Made—Effect of Determined by Reading Them Together.—Where one by a written contract purchases of another timber which he obligates himself to convert into sawlogs and sell and deliver to a third person, named in the

writing; and by another written contract made at the same time with such third person, sells and agrees to deliver to the latter between certain dates fixed in the writings, the logs he had purchased under the first contract, the two writings must be considered together in determining their meaning and legal effect, as they constitute a tripartite contract to be read in pari materia and must stand or fall together. They cannot be rescinded in part and enforced in part.

2. Contracts—Delay of Purchaser of Logs in Making Payment—Not Ground for Rescission of Contract and Cannot Discharge Other Party.—Where promises are divisible, that is, where the contract contains a number of promises to do a number of similar acts, a breach of one of them does not discharge the other party. Where divisible promises are to receive and pay for goods by installments, the installments being numerous and extending over a considerable period of time, a default either of delivery or payment will not ordinarily discharge the contract, although it must necessarily give rise to an action for damages.

3. Contracts—Rescission of Contract—Not Allowable Except on Grounds of Fraud or Mistake.—Where the rescission of a contract is sought and no equity is apparent upon which the right of the plaintiff thereto can be made to rest upon the ground of either fraud or mistake, the rescission will not be granted. In such case the plaintiff must seek his remedy in a court of law, by an action for the damages sustained.

D. D. FIELDS & SON and D. I. DAY for appellant.

O'REAR & WILLIAMS and R. MONROE FIELDS for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By this action, brought by the appellant, L. D. Collins, in the Letcher Circuit Court against the appellees, Swan-Day Lumber Company, a corporation, and McLin, Kilbourn & Company, a partnership composed of J. B. McLin, W. K. Kilbourn and Floyd Day, he sought to cancel a log contract he had made in November, 1909, with the appellee, Swan-Day Lumber Company, by which he had sold and agreed to deliver to it certain poplar, ash and cucumber sawlogs, to be cut by him from trees he had purchased from the firm of McLin, Kilbourn & Company; and also to cancel so much of the contract between himself and the latter company as bound him to sell to the Swan-Day Lumber Company the logs purchased of McLin, Kilbourn & Company. The cancellation of the Swan-Day Lumber Company's contract, and, to the extent indicated, that made with Mc-Lin, Kilbourn & Company, was asked because of the al-

leged failure of the Swan-Day Lumber Company to make to appellant certain payments for logs delivered when due, as provided by its contract with him; it being claimed that its failure to do so operated as a forfeiture of the contract and released appellant from any obligation to make further delivery of logs to it.

The two contracts referred to were in writing and were simultaneously made and executed. That between appellant and the appellee McLin, Kilbourn & Company, after setting out a description of the timber sold the former by the latter, and where situated; how and when to be measured; the prices to be paid therefor and when payable; and giving a lien upon the timber to secure such payments, provides:

"As a part of the consideration for this deal, second party (Collins) binds himself to sell all of the logs cut from said trees to Swan-Day Lumber Company, at the prices which have already been agreed upon between second party and said Swan-Day Lumber Company, and, is according to the terms of the written contract between said second party and said Swan-Day Lumber Company of even date herewith. Second party binds himself to begin work as soon as practicable, and to use due diligence in cutting, sawing and hauling said timber out until same is completed."

The contract between appellant and the appellee, Swan-Day Lumber Company, after providing for the sale and delivery by the former to the latter of not less than 2,500 nor more than 3,000 poplar, ash and cucumber sawlogs on the North Fork of the Kentucky river, at the mouth of Smoot Creek and at the mouth of Colly Creek, in Letcher County; giving the length and dimensions of the logs and how to be branded, contains the following further provisions:

"And, if, in the opinion of the second party, first party shall fail to use due diligence in driving and delivering said logs as aforesaid, then second party shall have the right to drive and deliver the same at first party's expense, the cost thereof to be deducted from the amount due on said logs. Of the logs to be furnished under this contract the said first party stipulates and contracts that at least two-thirds or more of the whole number of logs shall be first class as per grades heretofore specified; and for the non-fulfilment of this clause one dollar per thousand shall be deducted from all the

logs measured under this contract. * * * In consideration of which second party agrees to receive and pay for all logs delivered under this contract as follows: for the first class logs, $18.50 per thousand; for second class logs, $12.50 per thousand feet. On all logs furnished as per stipulations aforesaid fifty per cent of said purchase price shall be paid on the 15th day of the month following the respective measurement. The deferred fifty per cent to be paid or forfeited in accordance with the terms and manner hereinafter indicated, viz.: all logs included in this contract shall be placed for measurement on or before April 1st, 1910. As soon as practicable after the 1st day of July, 1910, an invoice shall be taken by second party of the logs embraced in this contract that have not been delivered into the North Fork of the Kentucky river. And second party shall make settlement in full with the first party for the deferred fifty per cent, on all measured logs found to have been delivered into the North Fork of the Kentucky river by July 1st, 1910, less ten per cent on the original contract price for losses sustained by second party on account of damaged sap upon all logs which are or shall be at said invoice undelivered. And upon all the logs delivered between the first and second invoice the deferred forty per cent shall be paid; and upon all logs found to be undelivered at the second invoice no further payment shall be made, but the first payment of fifty per cent is accepted by first party as full payment of said undelivered logs. The second invoice shall be made as soon as practicable after the 1st day of July, 1911. * * * This contract is intended to and does embrace all of the logs to be cut from the trees this day sold to said Collins by McLin, Kilbourn & Company, and said Collins is to use every effort to put all of said logs in the North Fork of the Kentucky river before July, 1910; but if some trees should be left over which cannot possibly be put in before July, 1910, said Collins binds himself to put them in under this contract before July, 1911. By the signing of this contract all parties hereto waive all and every claim to make changes because of any verbal arrangement or agreement made previous to and at time of or after, the signing of this article.''

The connection between these contracts will be understood by mention of the fact that Floyd Day is the president of the Swan-Day Lumber Company and also a part-

ner in the firm of McLin, Kilbourn & Company. It was alleged in the petition that by the terms of the contract between appellant and the appellee, Swan-Day Lumber Company there were to be monthly deliveries by appellant of the logs which were to be branded upon such deliveries by the Swan-Day Lumber Company, and the latter was to make payment, on the 15th of the month following each delivery and branding, of fifty per cent of the purchase price on all logs coming within the description contained in the contract; that appellant began early in December to cut and remove the logs from the lands of McLin, Kilbourn & Company, and that he made delivery to the Swan-Day Lumber Company of logs in December which were not branded until the 16th of that month; another delivery in January which were branded on the 15th of the month, and another in February which were branded the 11th day of the month, but that the Swan-Day Lumber Company failed to make payment of the fifty per cent on any of these deliveries on the 15th day of the month succeeding each delivery and, in fact, made no payment until February 28, 1910, at which time it paid the 50 per cent due on the December and January deliveries, and the payment of 50 per cent for the February delivery was not made until the Swan-Day Lumber Company was threatened with suit. That following the several deliveries of logs mentioned, another lot was delivered by appellant to the Swan-Day Lumber Company, but for these logs it did not pay until May 10, 1910, and after suit had been brought for its recovery; which suit was filed at the time this action was brought by appellant for the cancellation of the log contracts in the particulars already mentioned. The action brought to recover the fifty per cent due on the March delivery of logs was dismissed upon the payment of the amount due a few days later by the Swan-Day Lumber Company.

The appellees, Swan-Day Lumber Company and McLin, Kilbourn & Company, by joint and separate answer, as amended, traversed the allegations of the petition looking to the cancellation of their contracts with appellant, or either of them; and alleged, in substance, that as neither of the contracts contained a clause providing for a forfeiture thereof because of the failure on the part of the Swan-Day Lumber Company to pay for

logs delivered it by appellant, such forfeiture or the cancellation of their contract could not properly be adjudged. But that if the Swan-Day Lumber Company had failed to make the payments or any of them on logs delivered as required by its contract with appellant, the latter's remedy was an action at law for the damages he thereby sustained; that the Swan-Day Lumber Company is solvent, and that any judgment for damages that might be recovered against it could, if not paid, be made by execution, it being, as alleged, the owner of property in this State subject to execution in value far beyond the amount of the value of all the logs appellant contracted to deliver it.

It was further alleged in the answer that after the execution of the contract between appellant and the appellee Swan-Day Lumber Company he violated the contract by refusing to deliver a large part of the logs and by negotiating a sale of the logs and attempting to sell them to another party at a greater price than that stipulated in the contract in question; and that the action seeking the cancellation of that contract and, in part, that he had made with the appellee McLin, Kilbourn & Company, was brought with the fraudulent intent to violate his contract with appellees that he might consummate the sale of the logs to the third party at a greater profit than he would be entitled to receive from the Swan-Day Lumber Company under his contract with it.

On the submission of the case the circuit court refused to grant the relief prayed by appellant and entered a judgment dismissing his petition; and he has appealed.

It is manifest that the undertaking of appellant to sell and deliver to the Swan-Day Lumber Company the logs he purchased of McLin, Kilbourn & Company was a moving consideration for the sale of the logs to him by the latter; and this is shown not only by the contract he made with McLin, Kilbourn & Company, but also by the language of the contract made by appellant with the Swan-Day Lumber Company. The two contracts, which were simultaneously executed and by reason thereof must be read together, were really resorted to for the purpose of getting the logs cut from the McLin, Kilbourn & Company lands and delivered to the Swan-Day Lumber Company that it might, with its mills, convert them into lumber. Floyd Day, being a partner in the one concern and a stockholder in and president of

the other, was doubtless the moving spirit in the negotiations resulting in the execution of the two contracts. But we are unable to find in these transactions anything that was unfair to appellant. It is not claimed by him that any feature of either contract was not understood by him when they were executed; nor does he allege or prove fraud or mistake in either contract as a ground for the cancellation, in part, of the one he made with McLin, Kilbourn & Company or, in whole, of that made with the Swan-Day Lumber Company. His only contention is that the Swan-Day Lumber Company has forfeited its rights under the two contracts, and he has been relieved of the further delivery of logs to it, because of its failure to promptly meet, as required by its contract with him, the payment of the amounts due for past deliveries of logs he made it. Before determining whether this ground entitled him to the cancellation of the contracts, we will consider what ground there was for his complaint that the Swan-Day Lumber Company failed to pay him for the logs delivered.

A reading of appellant's contract with the Swan-Day Lumber Company fails to show that it provides for monthly "brands" of logs by it as contended by appellant's counsel. It does, however, provide that the first measurement and branding was to be made in December, 1909, and that all the logs included in the contract, should be placed by appellant for measurement on or before April 1st, 1910. No other provision with reference to the time of making the measurements and branding appear in the contract, in view of which it cannot be claimed that the contract expressly imposed upon the Swan-Day Lumber Company any obligation to make any other measurement or branding for appellant after that of December, 1909, until April 1st, 1910. But while the contract only provided for "brands" in December, 1909, and April, 1910, they were in fact made by the Swan-Day Lumber Company for appellant in January, February and March, 1910, and as the contract provided that fifty per cent of the amount due on each brand should be paid on the 15th of the month following each measurement and "brand," it can properly be said that this amount became due on the 15th of the month following each of these measurements and brands. We do not find from the evidence that the Swan-Day Lumber Company was as dilatory in making the payment of the fifty per

cent which became due January 15, 1910, on the measurement of December, 1909, and the fifty per cent which became due February 15, 1910, on the measurement of January, 1910, as claimed by appellant.  There was some delay in these payments, it is true, but they were made together February 28, 1910, and on the 2nd of March, 1910, in a letter which he wrote to the Swan-Day Lumber Company complaining that these payments had been delayed, appellant requested  that  the  next payment, which would become due on the 15th of March, 1910, on the February brand, be promptly paid when due, which was done.  In point of fact this payment was made on March 14, 1910, one day before it became due. On March 15, the day after the payment last referred to, another brand was made on which fifty per cent became due April 15th, 1910, which was only five days before this action was instituted; and this payment, as earlier stated in the opinion, was later made.

It is to be borne in mind that by the terms of his contract with the Swan-Day Lumber Company, appellant was required to have all the logs placed ready for measurement and branding by April 1st, 1910, yet, according to his own testimony, he failed of having from 800 to 1,000 of the logs placed for measurement at that time; and on March 27, 1910, only five days before the time was out, and after he had been paid, according to his own contention, all that was then due him—for the fifty per cent for the measurement and branding of logs made March 15 did not become due under the contract until April 15, 1910—appellant wrote a letter to Floyd Day, president of the Swan-Day Lumber Company, which appears in the record, wherein he complained that he had a hard contract and that the bad roads had interfered with his hauling of the logs, and asked an extension of time for delivering the remainder.  This extension was not asked on the ground of any delay on the part of the Swan-Day Lumber Company in the payments, but because of the bad condition of the roads.  In response to this letter the Swan-Day Lumber Company on March 31 wrote appellant, a copy of which letter appears in the record, giving its consent to the extension of the time for measuring to May 1st, 1910; and further consenting that appellant, notwithstanding the requirement of the contract that all the logs should be delivered by April 1st, might continue during the month of April to place them for measurement and branding.

It is patent from these letters and other evidence appearing in the record, that when this extension of time was granted to appellant neither he nor the Swan-Day Lumber Company had literally complied with the terms of the contract. The latter had been guilty of some delay in making the payments on the brands of December, 1909, and January, 1910, and appellant had failed to comply with that part of the contract requiring him to have all the logs placed ready for measurement by April 1st, 1910. Before the expiration of the extension of time obtained by appellant he brought this suit, and, about the time it was filed, refused to allow what logs he had out for measurement to be branded, and undertook to sell them to another company; which would indicate that it was his purpose to get out of the contract with the Swan-Day Lumber Company in order that he might sell the remainder of the logs to another party, perhaps at a greater profit, than he would have received by delivering them to that company. Appellant's failure to deliver the remainder of the logs after obtaining the extension of time for that purpose was certainly as much of a violation of the contract as were the brief delays indulged in by the Swan-Day Lumber Company in the matter of making payments on the logs that were measured and branded, and, therefore, if the failure on the part of either party to such a contract to comply with the letter of its requirements could be relied on as a ground for rescinding or cancelling the contract, appellant is in no better position to claim such a rescission or cancellation of the contract, than the Swan-Day Lumber Company.

In our opinion, however, if appellant, before obtaining the extension of time for delivering the remainder of the logs, had possessed the right to claim a cancellation of the contract, such right would have been and was waived by his obtention of the extension of time; and the previous delay of the Swan-Day Lumber Company in making the required payments on logs branded was, by the same means, condoned.

We do not overlook the fact that it is claimed by appellant that the letter written him March 31 by the Swan Day Lumber Company, giving its consent to the extension of time requested by him, did not reach him until the last of April, 1910. But the evidence conduced to prove that it was mailed on the day it was written, duly

stamped and directed to his proper address, and the presumption of his having received it is strengthened by more than one circumstance appearing from the record. But if it was not received, he is still left in the attitude of having violated his contract by failing to deliver all the logs by April 1st, 1910, as required by its terms.

We have been referred to no case which holds that a contract can be set aside upon so trivial a ground as that urged by appellant for the cancellation of the two contracts here involved. These contracts, containing, as they do, independent and divisible promises, cannot be rescinded or discharged by a default either as to delivery or payment; at most such default would only give rise to an action for damages; and if the Swan-Day Lumber Company violated the contract in the particulars complained of by appellant, it can be made to respond in damages. This principle is thus stated in 9 Cyc., 648:

"Where promises are divisible, that is, where the contract contains a number of promises to do a number of similar acts, a breach of one of them does not discharge the other party. Illustrations of divisible promises are to be found in contracts to receive and pay for goods by installments. Where the installments are numerous, extending over a considerable period of time, a default either of delivery or payment would not appear to discharge the contract, although it must necessarily give rise to an action for damages."

The agreement contained in the two writings with respect to the purchase by appellant of the logs and their sale by him, constitute a tripartite contract, are to be read *in pari materia,* and must stand or fall together. They cannot be rescinded in part and enforced in part. Johnson vs. Mitchell, 1 A. K. Mar., 225. In Ashmore vs. Hannen, 157 Ky., 439, we had under consideration the character of the right of rescission, and in the opinion quoted with approval the following excerpt from Bispham's Equity, section 472:

"Rescission, however, is a right of the complainant, and not a means for the assertion thereof; it is an equity, rather than an equitable remedy. In enforcing this equity, a court of chancery will, as the necessities of the case require, afford relief either by directing a reconveyance, or by ordering an instrument to be surrendered for cancellation. This relief is based upon equities which have already been considered, viz.: fraud and mis-

take; and the decrees which are made in such cases are naturally in accordance with the general course and practice of chancery, which always aims at specific relief.''

It is not apparent from the record that appellant has any right to the relief prayed. No equity is urged that would entitle him to the cancellation of the clauses of the two contracts which compelled him to sell logs to the Swan-Day Lumber Company, and his right thereto is not made to rest upon either fraud or mistake. He has mistaken his remedy; and if entitled to any relief at all, he must find it in a court of law. Indeed, it appears that he recognized this fact, for after the institution of this action, and on final settlement for all the logs delivered, when appellant demanded of the Swan-Day Lumber Company the fifty per cent of the contract price known as the ''retain money,'' amounting to $1,150.42, which, by the terms of the contract, was not to be paid until July 1st, 1910; the latter attempted to scale the amount going to appellant for the logs actually delivered by holding out ten per cent, or $218.31, because of sap rot in some of the logs, which would have left $934.11, and this amount, when tendered to appellant, was refused and he thereupon brought a suit at law to recover of the Swan-Day Lumber Company the $1,150.42. The action was transferred to the equity docket and consolidated with this action and on the hearing judgment was given appellant for the entire $1,150.42 claimed by him. It thus appears that he has been paid in full by the Swan-Day Lumber Company for all the logs he actually delivered.

As the circuit court did not err in dismissing appellant's petition in the instant case, the judgment is affirmed.

Whole court sitting.