# Eason Drug Co., *et al. v.* Montgomery Showcase Company.

## *Assumpsit.*

### (Decided May 14, 1914. 65 South. 345.)

1. *Sales; Contract; Price.*—Where the contract of sale provides "terms net cash. All terms mean from date of shipment and not from date goods are received," the price is due on the delivery of the goods by the seller to a carrier for transportation to the buyer.

2. *Same; Breach by Seller; Buyer's Remedy.*—Where the facts justified it, a buyer may rescind the contract of sale, return the goods, and sue for the price paid, or he may affirm the contract and sue for breach of warranty.

3. *Same; Construction.*—Where the contract provides that if the goods are not up to contract, the seller may enter upon the premises of the buyer and remove the same, and that a retention of the goods for ten days by the buyer without complaint is an acceptance and a conclusive admission of the representations made by the seller, and the contract also stipulates "terms, net cash, all terms mean from date of shipment, and not from date goods are received," the seller is not prevented from requiring the buyer through draft with bill of lading attached to pay for the goods before obtaining possession; and where the buyer pays the draft, and takes possession of the goods, he has ten days within which to examine them, and if within that period he discovers that they do not comply with the terms of the contract, he must complain to the seller, and either return the goods and demand the price paid, or he may keep them and sue for breach of warranty.

4. *Same.*—A contract stipulating for cash payment and for sight draft for cash payment with bill of lading sent through a bank contemplates the drawing by the seller of a draft attached to a bill of lading for the purchase price, and the buyer must pay the draft before obtaining possession of the goods, notwithstanding he is entitled to inspect the goods and determine whether or not they come up to the contract.

5. *Appeal and Error; Harmless Error; Pleading.*—Where a defendant can make the identical defense under other pleas, he is not prejudiced by the sustaining of demurrers to a plea.

APPEAL from Dale Circuit Court.

Heard before Hon. M. SOLLIE.

Assumpsit by the Montgomery Showcase Company against the Eason Drug Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The complaint sufficiently appears from the opinion. The following are the pleas:

(1) The general issue. (2) Plaintiff, being a manufacturer of furniture, did agree to make and did bargain to defendants the following furniture, to wit, one tobacco wall case, to be of design No. 1804, according to one of plaintiff's catalogues, which was then and there exhibited to defendant, and one bookcase like drawing then and there attached, being a drawing made from a certain design contained in said catalogue, and that, according to the conditions expressed in said contract, said furniture was to be made in workmanlike manner and finished in golden oak; that plaintiff at the time said contract was made for said furniture, made in manner and form as alleged and suitable and fit for the purposes and use as alleged, defendants were to pay the sum of $77.50, if up to contract. But defendants aver that plaintiffs breached the contract in this: That when said furniture arrived in Ozark defendants examined said furniture, and found that same was not done in workmanlike manner, that it was not finished in golden oak, but merely stained in oak, that the wood was inferior, that the joints were bad, and not done in workmanlike manner, that it was not fit, but was worthless for the purpose for which it was sold, that it was not up to contract; whereupon defendants refused to accept and pay for said furniture, and notified plaintiff that same was in depot subject to order of plaintiff. (4) Defendants say that, under the terms of said contract of sale, defendants were to have possession of said furniture for ten days, and that retention of same for a period of ten days should constitute acceptance by defendant, but plaintiffs breached this contract, in that it shipped the goods bill of lading attached, and refused to allow defendants to have possession of said furniture

for said ten days, and thereupon defendants rescinded said contract, and left said furniture in the depot subject to the order of plaintiff, and so notified plaintiff.

H. L. MARTIN, and J. E. ACKER, for appellant. Under the complaint and the evidence introduced to support it, defendant was entitled to the affirmative charge. —*Beadle v. Graham,* 66 Ala. 99; *Martin v. Massey,* 127 Ala. 509; 57 Ala. 547; 88 Ala. 329. The court erred in directing a verdict against defendant on plea 4.—Authorities supra. Where the buyer has the right of inspection, a suit for the price cannot be maintained unless there has been an acceptance.—35 Cyc. 227 and 528; *Hudson v. German Fruit Co.,* 95 Ala. 625. The court erred in sustaining demurrer to plea 3.—24 A. & E. Enc. of Law, 1120; 38 Am. St. Rep. 395.

J. E. Z. RILEY, for appellee. The time need not be proven exactly as laid.—*So. Ry. v. Taylor,* 148 Ala. 55. The sale was complete.—*Capehart v. Furman Co.,* 103 Ala. 671. A delivery to a carrier was a delivery to the purchaser under the contract.—*Bradford v. Marbury,* 12 Ala. 520; 35 Cyc. 193, 316 and 330. The ultimate fact of delivery was a question for the jury.—*Thomas v. de Graffenried,* 17 Ala. 602. Defendant had advantage of the same defense under other pleas, and any error in sustaining demurrer to plea 3 was harmless.

DE GRAFFENRIED, J.—This litigation arose out of a sale by the Montgomery Showcase Company of a showcase to the Eason Drug Company. The showcase was manufactured by the Montgomery Showcase Company for the Eason Drug Company, and was shipped by the showcase company to the Eason Drug Company, at Ozark, Ala. The terms of sale were cash, and when the case was shipped the showcase company drew on the

Eason Drug Company for the purchase price. Attached to the draft was the bill of lading which had been issued by the railroad company to the showcase company. Of course, in order to get the possession of the showcase out of the railroad company at Ozark, it was necessary for the Eason Drug Company to pay the draft, and thus get possession of the bill of lading which was attached to the draft. This the Eason Drug Company failed to do, and the railroad company finally sold the showcase for freight and storage charges

1. There was but one count to the complaint, and in that count the plaintiff, the showcase company, claimed of the defendant "the sum of $77.50, with the interest thereon, for goods and merchandise sold by plaintiff to the defendant, which amount was due and payable on the 20th day of April, 1911, and which amount is due and unpaid."

We desire to say, in passing, that there is, under the very terms of the written evidence of the contract of shipment, nothing in the contention of appellant that the $77.50 did not become *due* the plaintiff until the showcase was in the depot at Ozark ready for delivery to the defendant. The contract contains the following express stipulations: "Terms net cash. All terms mean from date of *shipment* and *not* from date goods are received." The goods were delivered to the railroad company and bill of lading obtained therefor on April 20, 1911.

We may also say, in passing, that we deem it unnecessary to consider the action of the trial court in sustaining the plaintiff's demurrer to plea 3. Under plea 2 the defendant was entitled to make the identical defense which was set up in plea 3, and plea 2 placed fewer burdens, in so far as the evidence that was necessary to sustain it is concerned, upon the defendant than plea

3. The record therefore affirmatively shows that no injury was done the defendant by the elimination of plea 3 from the complaint.

2. The Montgomery Showcase Company evidently has a printed form—with blanks to be filled in—of a contract covering contemplated sales of its furniture. Some of the clauses in this form plainly show by their terms that they are applicable only to sales on time, and have no applicability to sales for cash. Other clauses apply to both time and cash sales. One of the clauses is as follows:

"It is fully agreed that if goods are not up to contract the Montgomery Showcase Company may enter my—our—premises and take possession and remove same without process of law. It is fully agreed and understood that a detention of the above property for ten days by me—us—without complaint, constitutes acceptance, and it is a conclusive admission of all representations made by or for consignor, and void of all contracts as to warranty expressed or implied."

This, as already stated, was a *cash* sale, and the above provision applies to both sales for cash and on credit. The rule that, "if the facts justify it, the buyer may rescind a contract of sale, return the article bought, and sue for the price paid, or, if the facts justify it, he may affirm the contract and maintain an action for breach of warranty," is familiar.—*Abraham v. Browder,* 114 Ala. 287, 21 South. 818.

The above-quoted clause in so far as the defense attempted to be set up by plea 4 is concerned, simply means that, if the Eason Drug Company kept in its possession the show case for *ten* days without *complaint,* then that it should be held conclusively to have unqualifiedly accepted, as satisfactory in all respects, the said showcase. It does not mean that the showcase compa-

ny did not have the right, through draft with bill of lading attached, to require the defendant to pay for the showcase before obtaining possession of it, or that the showcase company was to allow the drug company ten days, or, as to that matter, any time, within which to inspect the showcase before obtaining possession of it from the railroad company at Ozark. If, in the instant case, the drug company had paid the draft and taken possession of the showcase, then, under the clause above quoted, it would have had ten days within which to have examined the showcase. If, during that period, it had discovered that the showcase did not meet the requirements of the contract, then during that period it could have made complaint to the showcase company, and either returned the showcase and demanded the purchase price, or it could have kept the showcase and brought suit against the showcase company for damages for the breach of warranty.—*Abraham Bros. v. Browder, supra.*

The plaintiff was entitled to affirmative instructions in its behalf as to the defense attempted to be set up in plea 4.

3. The issues presented by pleas 1 and 2 were for the jury, and the jury settled those issues in favor of the plaintiff. We can see no reason why the trial court, under the conflicting evidence in this case, should have disturbed that verdict. Under the terms of the contract, the purchase money was due the plaintiff when delivery of the showcase was made to the railroad company at Montgomery, and there was a provision in the contract that:

"S. D. (sight draft) for cash payment and B——L (bill of lading) will be sent through —— Bank. Where no bank is specified, you are at liberty to ship through any bank you may see fit."

The draft in this case was drawn under this quoted provision, and the contract expressly gave the drug company ten days *after* taking possession of the showcase within which to inspect it. It was therefore within the contemplation of the parties that the inspection of the showcase should take place *after* its receipt by the drug company.—35 Cyc. p. 226.

We find, upon all the issues, abundant evidence to support the verdict of the jury, and we cannot, as already said, hold that the trial court erred in refusing to set the verdict aside.

The judgment of the court below must therefore be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.