ISBELL-BROWN COMPANY *v.* STEVENS GROCER COMPANY.

Opinion delivered March 29, 1915.

1. SALE OF CHATTELS—SHIPMENT OF FREIGHT—DELAY—REMEDY OF PURCHASER.—As soon as the vendor of property delivers the same to a carrier, consigned to the vendee, the title passes to the vendee, and for any delay in shipment the vendee's remedy is against the carrier.

2. SALES—TITLE TO GOODS SHIPPED—BILL OF LADING—SHIPPER'S ORDER.—As between seller and purchaser the title to goods shipped under a bill of lading in favor of the seller or his agent, with a draft attached, the goods not to be delivered until the draft is paid, does not pass to the buyer until he has complied with the conditions.

3. SALES—TITLE—DELAY IN SHIPMENT—SHIPPER'S ORDER.—When goods are consigned to shipper's order, and bill of lading sent to a bank, with instructions that it be not delivered until the attached draft was paid, and there was an unreasonable delay on the part of the carrier in delivering the goods; *held,* there was no absolute sale and the goods were at the risk of the consignor until delivered to the consignee, and the consignee will not be liable for refusing to accept the same, where by the terms of the contract prompt delivery was a part of the contract of sale.

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; affirmed.

STATEMENT BY THE COURT.

In February, 1913, the Isbell-Brown Company, a corporation doing business at Grand Ledge, Michigan, through its agent, the Munn Brokerage Company, of Lit-

tle Rock, Arkansas, called on the Stevens Grocer Company of Newport, Arkansas, and obtained from it the following order:

"Lansing, Michigan, February 25, 1913.

"Isbell-Brown Company.

"Order No. 3486.

"Have this day sold to Stevens Grocer Company of Newport, Arkansas, 125 bags, H. P. Pea Beans at $2.43 bus.; quality equal to sample No. 593; 125 bags, Pea Beans, at $2.33 bus., quality equal to sample No. 594. Freight prepaid to Newport, Arkansas. Shipment, prompt. Terms: Draft with B. L. payable upon arrival and examination of goods.

"Stevens Grocer Company, Purchaser.

"Duplicate to Munn Brokerage Co.,
Broker.

"Sales Confirmation.

"Term shipment; prompt shipment is a shipment in ten days. Time is to count from the time of receiving complete shipping instructions, not including day of sale, Sundays or holidays, at place of shipment."

Within the time specified the Isbell-Brown Company shipped a car of beans of the kind and quality described in the order to Newport, Arkansas, and obtained a bill of lading therefor from the railroad company to which the beans were delivered. The Isbell-Brown Company paid the freight and consigned the beans, "To the order of the Isbell-Brown Company, Newport, Arkansas; notify Stevens Grocer Company."

The draft for the purchase price of the beans was attached to the bill of lading which was then sent to a bank at Newport for collection. When the beans arrived at Newport, the Stevens Grocer Company refused to accept and pay for the same, and the Isbell-Brown Company resold the shipment and received therefor $1,519.38, which was the best price obtainable at the time, and which was $116.87 less than the price specified in the order.

This action was instituted by the Isbell-Brown Company against Stevens Grocer Company to recover the de-

ficiency, and also to recover the expense of the resale of the beans. The facts above set out were proved at the trial, and it was also shown on the part of the defendant that there was an unreasonable delay in the transportation of the beans, and that the price of the beans had fallen when the car in question arrived at Newport, and that on this account it refused to accept and pay for the beans.

The court told the jury that the only question for it to determine was whether or not there was an unreasonable delay of the shipment in transporting it from Grand Ledge, Michigan, to the defendant, and in the arrival of the beans at Newport, Arkansas. The jury found that there was an unreasonable delay in the shipment from Grand Ledge, Michigan, to Newport, Arkansas. Whereupon the court rendered judgment in favor of the defendant, Stevens Grocer Company. The plaintiff, Isbell-Brown Company, has appealed.

*Ira J. Mack,* for appellant.

The delivery of the beans by the appellant to the carrier on March 4, 1913, fulfilled the contract on its part as to shipment. 35 Cyc. 2016; 7 Words & Phrases, § 6489, and cases cited. It is sufficient answer to appellee's contention that there was no delivery on the part of appellant because it took a bill of lading to its order, and did not ship direct to appellee, to say that the terms of the order was draft with bill of lading payable on arrival and examination of the goods, whereby it was agreed that the title to the goods was to remain in appellant until the draft was paid. The bill of lading represents the property, and when attached to a draft, the title to the property passes with the draft. 79 Ark. 356.

*Jones & Campbell,* for appellee.

Delivery of goods to a common carrier, *consigned to the purchaser,* is delivery to the purchaser. 51 Ark. 133; 67 Ark. 135. But that is not the case here. The shipment was consigned to appellant, at Newport, Ark., notify Stevens Grocer Company. The purpose of appellant to re-

tain title and right of possession of the beans is manifested by the way in which delivery was made to the common carrier.   64 Ark. 169; Burdick on Sales, § 3; 98 Ark. 495; 77 Ark. 482; 123 U. S. 727; 89 Ark. 342.

HART, J., (after stating the facts).   (1)   It is the settled law in this State that as soon as a vendor delivers property to a carrier consigned to a vendee, the title passes to the vendee and for any delay in shipment, the vendee's remedy is against the carrier.   *Brownfield* v. *Dudley E. Jones Co.,* 98 Ark. 495; *Roberts Cotton Oil Co.* v. *Grady,* 105 Ark. 53; *Templeton* v. *Equitable Mfg. Co.,* 79 Ark. 456.

In the last mentioned case, Templeton & Adams, merchants in Arkansas, purchased some jewelry from the Equitable Manufacturing Company.   There was an unreasonable delay in the arrival of part of the goods purchased and on that account the purchasers refused to accept any of the goods.   The seller sued for the contract price of the goods, and recovered judgment.   The judgment was affirmed because the goods were consigned to Templeton & Adams, and the court held that the title to the goods vested in them when they were delivered at the shipping point to the railroad company properly consigned to them, pursuant to the contract of purchase.

(2)   Here, the facts are essentially different.   The goods were consigned to "shipper's order," at Newport, Arkansas, and the order contained this clause:   "Terms: Draft with B. L. payable upon arrival and examination of goods."   As between seller and purchaser, it is a general rule that the title to goods shipped under a bill of lading in favor of the seller or his agent with a draft attached does not pass to the buyer until he has complied with the conditions.   See case notes to 5 Am. & Eng. Ann. Cases, 263, and 2 L. R. A. (N. S.) 79.

The rule has been recognized by this court.   See *Arkansas Southern Railway Company* v. *German National Bank,* 77 Ark. 482; *Josey* v. *State,* 88 Ark. 270; *Midland Valley Rd. Co.* v. *J. A. Fay & Eagan Co.,* 89 Ark. 342; *American Jobbing Assn.* v. *Wesson,* 92 Ark. 287.

In the case before us the seller consigned the goods to itself at Newport, and sent the bill of lading with draft attached to a Newport bank with directions that the bill of lading was not to be delivered to the purchaser until the payment by it of the draft. In this way the bill of lading was used as a symbol of the property to express the seller's intention as to the conditions upon which the property should be delivered.

(3)    According to the testimony of the defendant, there was an unreasonable delay in the arrival of the car of beans at Newport, and on this account, it refused to accept the beans or pay the draft. Hence there was no absolute sale of the goods, and the goods were at the risk of the consignor until delivered to the consignee. We think this is the effect of our previous decisions.

In the case of *Templeton* v. *Equitable Manufacturing Company,* to which reference has been made above, the court said that while a bill of lading is both a receipt and a contract, and is a muniment of title, yet it had no influence in that case, as the goods were not sent to shipper's order, but were consigned directly to Templeton & Adams. Continuing, the court said the case turned simply on whether the show case was delivered to Templeton & Adams at Alliance, Ohio, when there delivered to the common carrier, and held that it was because the contract stipulated for an absolute sale of the goods. For this reason, a recovery of the purchase price of the goods was sustained.

So, too, in the case of the *American Jobbing Association* v. *Wesson, supra,* the court held that where goods are consigned to shipper's order, there is no delivery at the time and point of shipment, and that the contract is executory.

In the case of *Gibson* v. *Inman Packet Co.,* 111 Ark. 521, it was held that the delivery of goods by the seller to a common carrier consigned to the purchaser is in effect a delivery to the consignee, and that on this account the consignor has no right of action for the loss or injury of the goods. The court said that the rule had its origin in

the theory that the parties by such delivery intended to pass title to the property, but where the contrary intention is shown, the rule does not apply.

It follows that the seller having consigned the goods to shipper's order, and having neither endorsed nor transferred the bill of lading to the buyer, and the draft being made payable after the arrival and examination of the goods, the latter did not have any title to the goods until the conditions prescribed by the seller had been complied with by it; and the goods having been delayed in transportation an unreasonable length of time. By the express language of the contract, the terms were "draft with B. L. payable upon arrival and examination of the goods." Under this provision of the contract, the buyer had a right to rescind the contract of sale, and the remedy of the seller or consignor should have been against the railroad company for its failure to deliver the goods within a reasonable time. *Cochran* v. *Chetopa Mill & Elevator Co.,* 88 Ark. 343. We also think this rule follows from the principles of law announced in our own cases cited above.

To the same effect, see 3 Hutchinson on Carriers (3 ed.), § 1318; Mechem on Sales, vol. 2, § 1195.

The judgment will be affirmed.