## Ten Broeck Tyre Company v. Rubber Trading Company

### Rubber Trading Company v. Ten Broeck Tyre Company.

(Decided November 25, 1919.)

Appeals from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1.  Sales—Construction—Breach—Defenses.—By contract dated February 24, 1916, plaintiff sold to defendant twelve tons of prime ribbed smoked sheet rubber for successive deliveries in quantities of four tons during the months of April, May and June. On April

29th, plaintiff sold defendant forty-three thousand pounds of ribbed smoked sheets for delivery in certain quantities during the months of May, June and July. Held, that the two contracts were separate and distinct, and that the breach of one by the plaintiff did not justify the defendant's failure to perform the other.

2. Sales—Breach of Contract—Damages—Mitigation of Damages—Evidence.—Where the buyer breached a contract for the sale of rubber denying the right of inspection, evidence that he then offered to carry out the contract if permitted to inspect the rubber was not admissible on the measure of damages since the seller's duty to minimize the damages did not require him to go so far as to make a new contract with the buyer.

3. Sales—Construction of Contract—Buyer's Right of Inspection.—A contract for the sale of goods by sight draft against bill of lading denies to the buyer the right of inspection before payment, and the rule applies where by consent of the parties the goods are delivered to a bailee at the expense of the buyer to be kept until paid for.

4. Customs and Usages—Contracts—Varying Terms of Contract—Pleading.—Where a contract for sale provides against inspection by the buyer, the buyer cannot claim the right of inspection because of a custom repugnant to, or inconsistent with, the contract, and a demurrer to the plea of such a custom was properly sustained.

5. Pleading—Cancellation of Instruments—Reformation—Fraud and Mistake—Sufficiency of Pleading.—In an action for a breach of a contract of sale, a paragraph of defendant's answer considered and held to state facts sufficient to authorize a reformation of the contract on the ground of the fraud of the seller and the mistake of the buyer, but not sufficient to authorize a rescission.

6. Sales—Rescission by Buyer—Defective Quality.—A seller's breach in any delivery made under an entire contract for successive deliveries will relieve the buyer from liability for subsequent deliveries if notice of his refusal to perform is promptly given, and this right is not waived by the retention of the defective shipment where the buyer complained thereof and was allowed a deduction therefor from the contract price; and there is additional reason why this rule should apply where the buyer is denied the right of inspection until he has paid for and received the goods.

BINGHAM, SLOSS, TABB & MANN for Rubber Trading Company.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY, CHARLES W. MILNER and TRABUE, DOOLAN & CRAWFORD, for Ten Broeck Tyre Company.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on appeal of Rubber Trading Company and reversing on appeal of Ten Broeck Tyre Company.

By contract dated February 24, 1916, the Rubber Trading Company of New York City sold to the Ten Broeck Tyre Company of Louisville, twelve tons (2,240 pounds each) of prime ribbed smoked sheet rubber at eighty-seven and one-half cents per pound for successive deliveries in quantities of four tons each after arrival in New York during the months of April, May and June. The terms of payment were, "Sight draft against B/L." Thereafter, the Rubber Trading Company, by contract dated April 29th, but not executed by the Ten Broeck Tyre Company until May 3rd, sold to the latter company forty-three thousand pounds of ribbed smoked sheets for delivery in certain quantities during the months of May, June and July, at seventy-eight and one-half cents per pound. The terms of the sale were "Sight draft against B/L through Louisville Banking Company." It was agreed between the parties that all shipments that were not paid for on arrival should be placed in Tabb's warehouse in Louisville, where they were to remain at the expense of the Ten Broeck Tyre Company until paid for. The first shipment was made on April 20th, and was accepted and paid for on May 12th. The next two shipments were made on May 3rd and May 12th. According to the Ten Broeck Tyre Company, the latter shipments were not prime ribbed smoked sheets, but were mouldy and mildewed and part of them consisted of scraps and samples, embracing a number of different brands of rubber. When the last two shipments were taken up, the vice president of the Rubber Trading Company was in Louisville and an allowance of two cents per pound was asked by the Ten Broeck Tyre Company and paid by the Rubber Trading Company for the defective rubber in those two shipments. At the same time, the Ten Broeck Tyre Company notified the Rubber Trading Company that it would not receive any further shipments under either contract, although four of the shipments under the first contract and three of the shipments under the second contract were then in Louisville. Thereupon, the Rubber Trading Company notified the Ten Broeck Tyre Company that it would sell for the account of the Ten Broeck Tyre Company the rubber which had been refused, as speedily as possible, and for the best prices obtainable, and would hold it liable for the difference between the contract prices and the prices on the resales, as well as for the expense

incurred in making the resales. The Rubber Trading Company then sold the rubber in accordance with the notice.

This suit was brought by the Rubber Trading Company against the Ten Broeck Tyre Company to recover the difference between the contract prices of the rubber and the prices obtained on the resales and the reasonable and necessary expenses incurred in making the resales. On a trial before a jury the court peremptorily instructed the jury to find for plaintiff the amount of damages and expenses incurred on the second contract. The liability of the defendant under the first contract was submitted to the jury, which returned a verdict in favor of the defendant. Both the plaintiff and defendant appeal.

On the appeal of the defendant it is first insisted that as the proper measure of damages was the difference between the contract price and the market price of the rubber at the place of delivery, the court erred in not permitting the defendant to prove that after notifying plaintiff that it would receive no more shipments under the contracts because of the defective condition of the rubber, it immediately offered to buy all the rubber covered by both contracts at the prices named in the contracts, if permitted to inspect the rubber before payment. Since no damages were allowed plaintiff under the first contract, the offered evidence concerns only the extent of defendant's liability under the second contract. Before passing on the admissibility of the offered evidence, it becomes necessary to determine who breached the second contract. It is argued on behalf of the defendant that as the two contracts were for the successive deliveries of the same article, and covered approximately the same periods of time, it was not necessary for defendant to go through the form of receiving and paying for shipments under the second contract when plaintiff's failure to comply with the first contract had made it certain that it was engaged in shipping rubber that did not meet the requirements of the contract. Such, however, is not the prevailing rule. On the contrary, the authorities are agreed that where the contracts are separate and distinct, the breach of one by the seller will not justify the buyer's failure to perform the other. Elliott on Contracts, sec. 5053; Williston on Sales, sec. 467; Lestershire Lumber, etc., Co. v. W. M.

Ritter Lumber Co., 144 Fed. 568; Ritter Lumber Co. v. Lestershire, 153 Fed. 575; Sleepy Eye Milling Co. v. Hartmann, 184 Ill. Appeals, 308; Hanson v. Wittenberg, 91 N. E. 383; Stephenson v. Cady, 171 Mass. 6; Hutchens v. Sutherland, 22 Nev. 363, 40 Pac. 409; Bowers Granite Co. v. Farrell, 66 Vt. 314, 29 Atl. 491; Collins v. Swan-Day Lumber Co., 158 Ky. 231, 164 S. W. 813. It is therefore clear that defendant breached the second contract and plaintiff's duty to minimize the damages did not require him to go so far as to make a new contract with defendant. Hirsh v. Georgia Iron & Coal Co., 169 Fed. 578; Minneapolis Threshing Machine Co. v. McDonald, 87 N. W. (N. D.) 993. We therefore conclude that the offered evidence was properly rejected.

Another error relied on by the defendant was the action of the court in sustaining a demurrer to its plea that it was the established custom of the rubber trade to permit the buyer to inspect the rubber, and that plaintiff had breached the contracts by denying the defendant this right. Ordinarily, of course, a buyer has a reasonable opportunity to inspect the goods, but this rule does not apply where the contract provides otherwise. Here, each of the contracts provided for payment by a sight draft against bill of lading. Such contracts have been uniformly construed to deny the right of inspection before payment, the reason for the rule being that the buyer is not entitled to the bill of lading or the possession of the goods until the draft has been paid. 5 Elliott on Contracts, sec. 5058, p. 1204; Williston on Sales, sec. 479, p. 839; Thick v. Detroit, etc., 101 N. W. 64 at 66; Sawyer v. Dean, 114 N. Y. 469, 21 N. E. 1012; Trenton Rubber Co. v. Small, 3 Pa. Supt. Ct. 8 at 13; Cochran v. Chetopa, etc., Co., 114 S. W. 711; Lawder v. Mackie Grocery Co., 54 Atl. 634, 97 Md. 1; Eason Drug Co. v. Montgomery, etc., Co., 65 So. 345; Hazel Hill Canning Co. v. Roberts Bros., 99 Atl. 424; Whitney v. McLean, 4 App. Div. 449, 48 N. Y. S. 793; Plum v. Hallauer, etc., 130 N. Y. 147. While this rule has generally been applied to cases where the merchandise remained in the hands of a carrier, we perceive no reason why it should not apply where by agreement of the parties the goods were placed in the hands of a bailee to be held until the buyer made payment in accordance with the contract. The cases of Charles v. Thomas, 96 Tenn. 507, 36 S. W. 396, and Thick v. Detroit, Utica & Romeo Ry., 137 Mich. 708,

101 N. W. 64, relied on by defendant do not announce a contrary rule. There the contracts did not provide for sales by sight draft against bill of lading, but the shipments were nevertheless made upon those terms. Since the shipments were contrary to the terms of the contract, it was held in the first case that the buyer could refuse to take the goods unless he was allowed to inspect them, and in the second case, that the shipment was not a sufficient tender of performance without an offer of inspection before acceptance, because the terms of shipment were such as to deprive the buyer of the right of inspection. Since the contracts provided against inspection before payment, it is clear that defendant could not claim the right of inspection before payment, because of a custom that was repugant to, or inconsistent with the contract. City of Covington v. Kanawha Coal & Coke Co., 121 Ky. 681, 89 S. W. 1126; Columbia Malting Co. v. Glenmore Distilleries Co., 150 Ky. 229, 150 S. W. 53. Hence, the demurrer to the plea of custom was properly sustained.

Another contention of the defendant is that the court erred in sustaining a demurrer to the fourth paragraph of its amended and reformed answer. The paragraph is as follows:

"For further answer to paragraph 2 of the petition herein, defendant says that by error of the draftsman of its original answer and answer as amended, it was stated therein that it made the contract dated April 29, 1916, set out in paragraph 2 of the petition, when in truth and in fact, what was intended to be said was that it signed the paper dated April 29, 1916, set out in paragraph of the petition, and any statement in the answer or answer as amended to the effect that it entered into the contract set out in paragraph 2 of the petition dated April 29, 1916, was a mistake and is hereby expressly withdrawn. Defendant says that said paper was signed by it under a mistake of fact induced by the false and fraudulent representations of the plaintiff herein, which representations were relied upon by defendant and unknown by defendant at said time to be false or untrue, and which were known by the plaintiff to be false and untrue, and of knowing the truth of which facts this defendant did not have equal means of knowledge with the plaintiff.

"Defendant says that the vice president of the plaintiff, to-wit: Robert B. Baird, came to Louisville, among other things, for the purpose of soliciting defendant to purchase additional rubber from plaintiff, and on April 30, 1916, which was Sunday, met a representative of this defendant, and attempted to induce defendant to purchase additional rubber from plaintiff, and representing to defendant that the New York market, which market controlled the price of rubber in the United States, was firm and advancing, and that at the close of the market on Saturday, April 29, 1916, the price of prime ribbed smoked sheet rubber was 78½ cents per pound. Defendant says that upon these representations, it agreed to enter into a contract with the plaintiff for 43,000 pounds of prime ribbed smoked sheet rubber upon the general terms and conditions set out in the writing dated April 29, 1916, copied in full in paragraph 2 of the petition, but that it was agreed between plaintiff and defendant that the price of said rubber should in no event exceed the market price at the close of the market in New York on April 29, 1916, which was 78½ cents per pound, and in the event the market price on May 1st was less than 78½ cents per pound, the market price on Monday, May 1st, 1916, should be the contract price of the rubber defendant agreed to purchase. Defendant says that thereafter plaintiff wrote up and sent to this defendant the writing dated April 29, 1916, referred to in paragraph 2 of the petition, and at the same time sent with said contract their letter dated May 1, 1916, advising this defendant that the market was firmer on May 1st, and there were more buyers than sellers, and inserting the price of 78½ cents per pound in said writing. Relying upon these representations, defendant signed said paper dated April 29, 1916, and returned it to plaintiff on May 3, 1916, under a mistake of fact as to the actual condition of the market on May 1, 1916. It says that on May 4th it was advised that the Monday's market in New York, as a matter of fact, for prime ribbed smoked sheet rubber for May was not 78½ cents per pound, but 75½ cents per pound, and June and July rubber was 73 cents per pound, and it thereupon immediately notified plaintiff of that fact and that the paper it had signed was not in accord with that statement, and that the agreement should be corrected accordingly. Defendant says that thereafter the plaintiff did not correct said contract and

make same agree with the facts, and thereafter at all times refused to make that agreement conform to the real agreement entered into between the parties. Defndant says that but for the false representations of the plaintiff, it would not have signed said alleged agreement of April 29th, and it prays that said alleged agreement be set aside as not the contract between the parties hereto, or if that can not be done, it asks that said contract be reformed so as to set out the true agreement between the parties, to-wit: the sale of prime ribbed smoked sheets at 75½ cents per pound for May rubber and 73 cents per pound for June and July rubber.''

Construed as a whole, the paragraph does not allege facts sufficient to authorize a rescission of the contract of April 29, 1916. While it alleges in a general way that the entire contract was obtained by fraud, yet when it comes to specify the fraud, it admits the purchase of the rubber but alleges that it was agreed between the plaintiff and defendant that the purchase price should be the same as the New York market price on May 1st, if less than seventy-eight and one half cents a pound. It further alleges in substance that plaintiff fraudulently inserted seventy-eight and one-half cents as the purchase price in the contract, when, as a matter of fact, the price for May was not seventy-eight and one-half cents a pound but seventy-five cents a pound, and for June and July rubber seventy-three cents a pound, and that defendant, relying upon the representation of plaintiff, executed the contract under a mistake of fact. It is also alleged that defendant immediately notified plaintiff of the incorrectness of the purchase price and asked that the agreement be corrected accordingly. It will thus be seen that the case is one where the contract of purchase was made and the price agreed upon, but by the alleged fraud of plaintiff and the mistake of the defendant the purchase price was not correctly stated in the contract. If these facts be true, then by reason of the fraud of plaintiff and the mistake of defendant the written contract does not express the true agreement between the parties, and the defendant, against whom the contract is sought to be enforced, was entitled to have the contract reformed. Since the facts alleged make out a case entitling the defendant to a reformation of the contract, it follows that the demurrer should have been overruled. Inasmuch, however, as the reformation of the contract, if

finally decreed, will not be a complete defense but will affect defendant's liability only to the extent of the difference between the agreed price and the price stated in the contract, the court on the return of the case will enter judgment for plaintiff for the uncontested part of its claim and then try the question of reformation after the parties have been permitted to plead to an issue.

On the appeal of plaintiff it is insisted that the court erred in not sustaining its motion for a peremptory instruction as to the first contract. In support of this proposition it is argued that the retention and use of the defective installment, with knowledge of the defects, precluded the defendant from refusing subsequent installments not in themselves defective, and that this is doubly true where an allowance has been made for the defective installment. By the contract of February 24th, plaintiff sold to the defendant twelve tons of rubber for delivery in certain quantities at certain times. That being true, the contract was entire and each installment was not a separate contract. As before seen, the defendant was not entitled to inspect before payment. After it had paid for the defective installment it accepted damages for the defects, but immediately notified plaintiff that it would accept no further installments. Under the rule in force in this state, a seller's breach in any delivery made under an entire contract for successive deliveries will relieve the buyer from liability for subsequent deliveries if notice of his refusal to perform is promptly given, and this right is not waived by the retention of the defective shipment where the buyer complained thereof and was allowed a deduction therefor from the contract price. Newton v. Bayless Fruit Company, 155 Ky. 440, 159 S. W. 968; and there is additional reason why this rule should apply to a case where the buyer is denied the right of inspection until he has paid for and received the goods.

On the appeal of the Rubber Trading Company the judgment is affirmed, and on the appeal of the Ten Broeck Tyre Company the judgment is reversed and cause remanded for proceedings consistent with this opinion.

The costs in this court will be equally divided.